UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-25045–CIV–MARTINEZ–OTAZO-REYES

VICKY CORNELL, individually, and in her
capacity, and as the Personal Representative of
the Estate of Christopher John Cornell also
known as Chris Cornell,

     Plaintiff,

v.

SOUNDGARDEN, a purported Washington
General Partnership, KIM A THAYIL, MATT
D. CAMERON, HUNDER BENEDIT
SHEPERD, RIT VENERUS, and CAL
FINANCIAL GROUP, INC.

     Defendant.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** is before the Court upon Defendants' Motion to Dismiss or Transfer ("Motion") (DE 26). After carefully considering the Motion, response and reply thereto, the Court concludes it lacks personal jurisdiction over Defendants. Accordingly, Defendants' Motion to Dismiss or Transfer is **GRANTED**.

I.     **BACKGROUND**

Soundgarden is a Grammy-winning Seattle rock band. Between 2016 and 2017, Soundgarden recorded, but never released, an album that is now at the center this litigation. Plaintiff is the widow and personal representative of the band's former lead singer, Chris Cornell ("Cornell"). Plaintiff claims she is the exclusive owner of that album, which she alleges Cornell solely authored from his Florida home. Plaintiff seeks a declaratory judgment to establish her ownership of the album's copyright and asserts various claims under Florida law to recover

1

Cornell's share of Soundgarden's partnership distributions. Defendants now move to dismiss this action for lack of personal jurisdiction or to alternatively transfer it to the Western District of Washington.

## II.     JURISDICTIONAL FACTS

Plaintiff contends this suit "centers on interactions and communications with [Cornell]" while he was in Florida and relates to intellectual property Cornell purportedly created in Florida. (DE 35: 5). In support of specific jurisdiction, Plaintiff submits emails written between February and March 2017 in which Cornell and his bandmates discussed an early composition of a song called *Ahead of the Dog* from an unreleased album (DE 37 and exhibits thereto). The band discussed the need to collaboratively refine the song in the studio. (*Id.*).

Plaintiff asserts that these emails establish that Defendants contribution to the album targeted "audio recordings that were *created in* Florida." (DE 37 ¶22). On the other hand, Defendants present evidence that Cornell arranged multiple shipments of recording equipment and instruments to be sent from Seattle to his New York City home in January 2017. (DE 43-13, 43-14). According to Cornell's personal assistant, he needed that equipment "because he [was] working on the album in his home studio" in New York City. (DE 43-14: 10). Cornell later shipped that equipment from his New York City home back to Seattle ahead of the band's scheduled studio sessions there in April 2017. (DE 43-15).

Further supporting Defendants' contacts with a Florida forum, Plaintiff states that Defendants "willingly continued their artistic and financial relationships" with Cornell after he permanently moved to Florida in 2013. (DE 35: 10). However, a residential mortgage from 2013 reveals that the Cornells considered New York City their "principle residence." (DE 43-4: 11-12). In addition, legal complaints filed on behalf of Cornell's trust between 2016 and 2017 reaffirm

2

that New York City was Cornell's "primary residence." (DE 43-5 ¶7; 43-6 ¶ 13; 43-7 ¶ 7). And

travel records also show that Cornell frequently commuted to and from New York and considered

New York City his home during 2016 and 2017. (DE 40-1).

Nevertheless, Plaintiff claims that she too is a Florida resident and contends this action

further arises out of Defendants' tortious activities directed towards her in Florida. (DE 1 ¶ 21). In

particular, she points out that Defendants withheld the band's partnership distributions owed to

her in Florida and aimed "pre-suit demand letters" at her in Florida. (DE 35: 6). Defendants counter

that Plaintiff's bank accounts are in Los Angeles, not Florida. (DE 37 ¶35). And although Plaintiff

produces a Florida driver's license as evidence of Florida residency (DE 37-1: 2), Defendants

present evidence that she refinanced her New York City home through a trust in 2018 using a loan

available only to New York residents. (DE  43-10: 4; 43-11: 7). In the paperwork for that loan

agreement, the trustee overseeing the property certified on Plaintiff's behalf that New York City

was her "principle residence." (*Id.*). Furthermore, Plaintiff does not deny that her minor children

attend school in New York City.

In support of general jurisdiction, Plaintiff attributes to Defendants an array of contacts

with Florida. For instance, Plaintiff alleges that Defendants "regularly, systematically, and

continuously conducted business with clients and third-parties, including Plaintiffs, in the state of

Florida." (DE 1 ¶22). She catalogs further: their granting of distribution rights in exchange for

royalty payments in Florida; marketing and promoting of musical works, a film, and live

performances, in Florida; licensing for the distribution of musical works, a film, and related

merchandise in Florida; receiving royalties and payments from transactions with Florida residents;

and performing concerts and live events in Florida. (DE 1 ¶19; DE 37). At the same time, she

concedes that the band maintains its principal place of business in the Washington, and that

3

Defendant Venerus is based in in Virginia.  (DE 1 ¶¶ 22).  Venerus's company, Cal Financial Group, Inc., is based in Delaware. (DE 27-1 ¶3). Both Venerus and Cal Financial consent to jurisdiction in Washington. (*Id.* ¶19).

Against this backdrop the Court considers whether jurisdiction lies in the Southern District of Florida.

## III.    LEGAL STANDARD

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff must establish a prima facie case of jurisdiction over a non-resident defendant." *Courboin v. Scott*, 596 Fed. Appx. 729, 732 (11th Cir. 2014) (per curiam) (citations omitted). If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing that the court lacks specific personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "The defendant then must raise, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (per curiam) (alteration and internal quotation marks omitted) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)). The Court must accept the facts alleged in the complaint as true "to the extent they are not controverted by the defendant's affidavits." *Snow v. DirectTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

If the defendant challenges jurisdiction and submits affidavit evidence in support of their position, the burden shifts back to the plaintiff. *United Tech. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The Court must resolve evidentiary conflicts and reasonable inferences in the plaintiff's

favor. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Applying

these precepts here, the Court concludes it does not possess personal jurisdiction over Defendants.

## IV.   DISCUSSION

In resolving challenges to personal jurisdiction, district courts must apply a two-part test,

evaluating (1) whether exercising personal jurisdiction would comply with Florida's long-arm

statute; and (2) whether it would comply with the Due Process Clause of the Fourteenth

Amendment. *Sculptchair*, 94 F.3d at 627.

### A.   Florida's Long-Arm Statute

"Florida's long-arm statute provides for both general and specific personal jurisdiction."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. §

48.193(1)-(2)). Specific personal jurisdiction exists "over causes of action arising from or related

to the defendant's actions within Florida . . . ." *Id.* (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*,

558 F.3d 1210, 1217, 1220 n. 27 (11th Cir. 2009)). "General personal jurisdiction exists when a

defendant 'is engaged in substantial and not isolated activity within this state,'" regardless of

whether the cause of action arose from that activity. *Id.* (quoting Fla. Stat. § 48.193(2)). "Florida's

long-arm statute is to be strictly construed." *Sculptchair*, 94 F.3d at 627.

### 1.   Specific Jurisdiction

Here, Plaintiff asserts that this Court can exercise either specific or general jurisdiction

over Defendants. Plaintiff predicates specific jurisdiction on Fla. Stat. § 48.193(1)(a)2, which

provides that a defendant may be subject to the jurisdiction of a court in Florida "for any cause of

action arising from . . . . [c]ommitting a tortious act within this state." *Id.*

Plaintiff argues that three events triggered this provision: (1) that Defendants "have

improperly withheld payments indisputably owed to Plaintiffs in Florida," (DE 1 ¶¶ 20, 89-91);

(2) that Defendants communicated to Cornell in Florida "over the course of several years" and "exchanged emails with [Cornell] containing audio files and lyrics, which form the basis of this copyright dispute"; and (3) that Defendants "threaten[ed] litigation [against Plaintiff] in a demand letter sent to Florida." (DE 35: 7-9). Strictly construing Florida's long-arm statute and based on the jurisdictional materials before it, the Court concludes that neither of these events are sufficient to carry Plaintiff's burden of establishing specific jurisdiction. Several considerations compel this outcome.

As to Plaintiff's first argument, the principal difficulty for Plaintiff is that neither her Florida driver's license nor the conclusory statement that Miami is her "primary and permanent home" establish that she was injured in Florida through the withholding of payments. (DE 37 ¶¶3-4). Indeed, Plaintiff concedes that her bank accounts are not in this forum, but in Los Angeles. More significantly, Plaintiff does not refute the fact that her mortgage documents certify that her primary residence is in New York. In addition, Plaintiff's minor children attend school in New York. [1] Plaintiff's affidavit, in relevant part, is contradicted by her own prior certifications in connection with her New York home financing. Given Plaintiff's failure to explain the discrepancy, as well as the general unreliability of her affidavit concerning residency, the Court will disregard its contradictory portions. *See Santhuff v. Seitz*, 385 Fed. Appx. 939, 944 (11th Cir. 2010) (applying the principle that a Court may disregard an affidavit that contradicts prior testimony without explanation). At best, it is unclear where Plaintiff, or Cornell prior to his passing, were truly domiciled. And even if Plaintiff were domiciled in Florida, reliance upon Plaintiff's Florida residence to establish jurisdiction over Defendants would "impermissibly

---

[1] *Jones v. Bank of Am., N.A.*, 564 Fed. Appx. 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.")

allow[] plaintiff's contacts with the defendant[s] and forum to drive the jurisdictional analysis."
*See, e.g., Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) (DEA agent that seized Nevada plaintiff's
money in Georgia not subject to Nevada personal jurisdiction despite knowledge of Nevada
injury). This is improper.

Second, Plaintiff posits that emails and correspondences from the band to Cornell "over
the course of several years" can establish specific jurisdiction. The Court disagrees.  As relevant
here, Florida law requires that a tort arise out of a non-resident's actions within Florida. Although
in very limited scenarios it is possible for tortious communications to meet the "within Florida"
aspect of § 48.193(1)(a)2, *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002), Plaintiff does
not specify how generic communications "over the years" are relevant to the tort of conversion.
Furthermore, correspondences from the Defendants to Cornell regarding audio files and lyrics
(purportedly sent to him while in Florida) do not appear to have given rise to the tort of conversion
either. These communications, as evidenced by the email chains supplied, were mostly aspirational
statements about the need to refine an unfinished recording. Those communications had nothing
to do with the commission of a tort.

This circumstance is distinctly different from the communications in *Wendt*, which
involved negligent misrepresentations directly connected to the negligence claims of the third-
party plaintiff. 822 So. 2d at 1260 (holding that "committing a tortious act" in Florida under section
48.193(1) can occur through the nonresident defendant's communications into Florida but
emphasizing that "the cause of action must arise from the communications . . . . this predicate
finding is necessary because of the connexity requirement contained in section 48.193(1)"); *cf.*
*Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010) (holding that defamatory
statements made into Florida by a nonresident defendant can supply the predicate for specific

jurisdiction under §48.193(1)). The communications considered in *Wendt* and *Internet Sols. Corp.* were tortious in and of themselves; here the communications were not.

Notwithstanding, there are other reasons that the band's communications relative to the unreleased recordings could not confer specific jurisdiction here. As previously set forth, Plaintiff's affidavit does not establish that her or Cornell's primary residence was Florida during the relevant period. This creates a problem because the Court cannot ascertain where the Defendants' communications concerning the unreleased album were received. And the Court cannot ascertain where the songs were composed.

Plaintiff states that "[Cornell] primarily created music by himself in our home recording studio in Miami-Dade County, Florida" and "[Cornell] would independently create audio recordings (or demos) in his home studio . . . . To the best of my knowledge, this process was used to create some (if not all) of the seven audio recordings at issue in this case (the "Unreleased Sound Recordings")." However, these statements are equivocal and imprecise. For instance, the correspondences at issue relate to a single recording, *Ahead of the Dog*, but Plaintiff's affidavit does not confirm that this particular recording was made in Miami-Dade County. This possibility is undercut by the fact that Cornell shipped equipment and instruments to New York, not Florida, during the relevant timeframe. And, more importantly, even if the recordings were made in Florida ***by Cornell***, there is no evidence before the Court that these recordings were discussed, let alone that artistic collaboration occurred, in Florida ***by Defendants***. Accordingly, Plaintiff has failed to meet her burden to establish specific jurisdiction over Defendants.

Finally, as to pre-suit demand letters being sent into Florida by Defendants, the Court concludes based on Florida law that litigation-related activity or settlement discussions alone are insufficient to establish jurisdiction unless the communications themselves are tortious. Indeed,

courts have rejected specific jurisdiction based on demand letters for precisely this reason. *See Standard Fittings Co. v. Sapag, S. A.*, 625 F.2d 630, 640 (5th Cir. 1980) (concluding that specific jurisdiction did not lie because "the making of a demand for payment does not amount to transacting business and because the cause of action did not arise out of the mailing or receipt of demand letters"); *Virgin Health Corp. v. Virgin Enterprises Ltd.*, 393 Fed. Appx. 623, 626 (11th Cir. 2010) (construing Florida's long-arm and determining that a demand letter did not trigger specific jurisdiction, reasoning: "While a demand letter frequently precedes a lawsuit, the letter here cannot be said to have given rise to [Plaintiff's] claims"). Here, Defendants' demand letters did not give rise to Plaintiff's claims. (DE 37-11). Rather, the letters straightforwardly confirmed that the band did not possess Cornell's personal property, conveyed Soundgarden's position regarding Washington partnership laws, and commanded Plaintiff to turn over audio files in her possession. (*Id.*). These communications did not constitute torts and are insufficient to establish specific jurisdiction. *See Wendt*; *Virgin Health Corp., supra.*

## 2.    General Jurisdiction

Plaintiff further claims that Defendants are subject to general jurisdiction in Florida under Fla. Stat. § 48.193(2). Pursuant to this section, general jurisdiction lies over "a defendant who is engaged in substantial and not isolated activity within this state," regardless of whether the claim arises from that activity. *Id.*

The Complaint alleges:

> This Court possesses general jurisdiction over the Partnership, as well as Thayil, Cameron and Shepherd (collectively, the "Surviving Band Members"), as each has actively, regularly, systematically and continuously conducted business in the State of Florida and are, therefore, subject to the jurisdiction of this Court pursuant to Florida Statutes § 48.193(2). By way of example, and without limitation, the Partnership and Surviving Band Members have: (i) granted the rights to distribute musical works in Florida in exchange for royalty payments; (ii) entered into license agreements for the exploitation of musical works, a film, and related

9

merchandise in Florida; (iii) marketed and promoted musical works, a film and live performances in Florida; (iv) received royalties and payments generated from transactions with Florida residents; (v) offered merchandise for sale to Florida residents; and (vi) performed concert and live stage events throughout the State.

Moreover, a considerable portion of the Partnership's business dealings have been regularly, systematically and continuously conducted business in the State of Florida, as Chris resided in this Court's district since 2011, and a number of the musical works for which the Partnership claims an ownership interest – including those that lie at the center of this dispute – were conceived, discussed, authored, created, produced, sent to and/or exchanged within this Court's district.

As to Venerus, he oversees Cal Financial which, while headquartered in Charlottesville, Virginia, "provide[s] highly personalized services to clients from around the world," including the State of Florida. Venerus and Cal Financial regularly, systematically and continuously conducted business with clients and third-parties, including Plaintiffs, in the State of Florida; have solicited business within the State of Florida; and, as described herein, conspired with the co-defendants to consciously elect to withhold amounts due to the Plaintiffs, thereby causing harm to the Plaintiffs in the State of Florida. Venerus and Cal Financial are subject to both general and specific jurisdiction in the State of Florida.

(DE 1 ¶¶20-21). Plaintiff's affidavit substantially tracks the allegations in the Complaint. (*See* 37 ¶¶ 23-28).

In response to Plaintiff's allegations, Defendants submitted affidavits challenging their continuous and systematic presence in Florida, establishing that their contacts in Florida, personally or professionally, were only isolated, periodic and incidental contacts. (DE 26-2, DE 26-3, DE 26-4; DE 27-1).

Taking the facts as alleged in the light most favorable Plaintiff, the Court concludes that general jurisdiction is squarely foreclosed by *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990). There, the Eleventh Circuit concluded in a lawsuit against Rock n' Roll Hall of Famer Daryl Hall of Hall & Oats, that his concert performances and album sales were insufficient to establish general jurisdiction. *Id.* at 1516 n. 7 (reasoning that "[i]f Hall could be sued on an unrelated cause of action because of concerts and record sales, then he likely would be amenable to suit in all the states of

the union on any cause of action. We reject without further discussion the possibility that Hall is generally present in Florida for jurisdictional purposes based on these contacts"). *Madara* is similar to this case in material respects. *See also Anderson v. Bullard*, 2019 WL 1200548, at *2 (M.D. Fla. Mar. 14, 2019) (concluding in a lawsuit against WWE that, despite maintaining and using a facility in Florida to train talent for nationwide performances, "there can be no dispute that this court cannot exercise general jurisdiction over WWE since WWE is not 'at home' in Florida").

Furthermore, the Court notes that Plaintiff's position is not only legally infirm but factually unsupported. After Defendants properly raised a jurisdictional issue, the pendulum swung back to Plaintiff to identify the nature of Defendants' contacts and demonstrate that jurisdiction was proper. Despite acknowledging the need for jurisdictional discovery, Plaintiff conducted none, expecting that Defendants would conduct jurisdictional discovery apparently on themselves. (DE 35: 9). This reflects a misunderstanding of the applicable burdens.[2] Given the absence of jurisdictional facts, Plaintiff's burden has not been met in this case.

## B.    Due Process

After considering whether jurisdiction is proper under Florida's long-arm statute, the Court must next consider whether due process is satisfied by applying a three-part test: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play

---

[2] Plaintiff's citation to *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) is inapposite. *See id.* (stating that "conclusory assertions of ultimate fact" are insufficient to shift to the plaintiff "the burden of producing evidence supporting jurisdiction"). The affidavit in Posner was nothing more than a recitation of Florida's long-arm statute. That is not the case here.

and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472-75 (1985)).

Given that Plaintiff has not established jurisdiction under the Florida long-arm statute, it is unnecessary for the Court to consider whether the Due Process prong has been met. *See Internet Sols. Corp.* 39 So. 3d at 1215 (recognizing that the Due Process Clause "imposes a more restrictive requirement" than Florida's long-arm). Nevertheless, the Court alternatively concludes that Plaintiff's efforts to establish jurisdiction fail for the same reasons set forth previously.

## V. CONCLUSION

For all these reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss or Transfer for lack of personal jurisdiction (DE 26) is **GRANTED**. Pursuant to 28 U.S.C. § 1406(a), in the interest of justice, this matter is **TRANSFERRED** to the United States District Court for the Western District of Washington. The Clerk is directed to mark this case **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami Florida, this ⟨10⟩ day of August, 2020

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

12