# Exhibit 1

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT ~~SOUTHERN~~
WESTERN DISTRICT OF ~~FLORIDA MIAMI DIVISION~~WASHINGTON
AT SEATTLE

~~CASE NO. 1:19-cv-25045~~

| | |
|---|---|
| VICKY CORNELL, individually, and in her capacity as the Personal Representative of the Estate of Christopher John Cornell a/k/a Chris Cornell, | No. 2:20-cv-01218−RAJ−MAT |
| Plaintiffs, | FIRST AMENDED COMPLAINT |
| v. | |
| SOUNDGARDEN, a purported Washington General Partnership, KIM A. THAYIL, MATT D. CAMERON, HUNTER BENEDICT SHEPHERD, RIT VENERUS and CAL FINANCIAL GROUP, Inc., | |
| Defendants. | |

Plaintiff Vicky Cornell, individually~~, and~~ in her                          ~~JURY     TRIAL     DEMANDED~~

capacity~~, and~~ as the Personal Representative of the Estate of Christopher John Cornell
~~a/k/a Chris Cornell,~~

                              ~~Plaintiffs,~~

            ~~v.~~

~~Soundgarden, a purported Washington General~~
~~Partnership, Kim A. Thayil, Matt D. Cameron, Hunter Benedict~~
~~Shepherd, Rit~~ Venerus and Cal Financial Group, ~~Inc.,~~

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Defendants.

COMPLAINT Plaintiff, Vicky Cornell, individually and in her capacity as the personal representative of the Estate of Christopher John Cornell (collectively, "Plaintiffs") through counsel, hereby files the following complaint Plaintiffs' First Amended Complaint against the defendants, Soundgarden, Kim Thayil, Matt Cameron, Hunter Benedict Shepherd, Rit Venerus, and Cal Financial Group, Inc. (collectively, "Defendants").

## I.  INTRODUCTION

*"Everybody out for my blood, everybody want my percent …*
*They just want to take what is mine, how much more can they get."*

*- Sweet Revenge*

1.1.  In 2009, Chris Cornell penned these lyrics about his former Soundgarden bandmates after they unlawfully (and unsuccessfully) attempted to deprive him of his rights in connection with the valuable musical works that he created for the band. Ten years A decade later, and after Chris' untimely passing, these lyrics hauntingly resonate as his former bandmates, once again, have attempted attempt to "take what is his" – or, more aptly, attempt to steal from his widow and minor children. This wrongful conduct shockingly shamefully started shortly after Chris' untimely death and ultimately forced left his widow, Vicky Cornell, with no choice but to bring this lawsuit.

2.2.  This case arises out of the disgraceful conduct of Chris' former Soundgarden bandmates – Kim Thayil, Matt Cameron, and Ben Shepherd – who, along with their business manager, Rit Venerus, have shamelessly conspired to wrongfully withhoeld hundreds of thousands of dollars indisputably owed to Chris' widow and minor children in an unlawful attempt to strong-

FIRST AMENDED COMPLAINT (No. 2:20−cv−01218−RAJ−MAT)−2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

arm Chris' Estate into turning over certain audio recordings created by Chris before he passed away.

3. The disputed seven audio recordings were solely authored by Chris; contain Chris' own vocal tracks; and were bequeathed to Chris' Estate for the benefit of his widow, Vicky Cornell, and their minor children. 4. Vicky long ago offered to share the sound recordings with the band, provided that they were released in a way that would respect her late husband's legacy and wishes (including to have his trusted producer involved in the process). The band refused, however, on the absurd contention that the recordings are somehow the sole property of their purported partnership and that they (despite not creating the sound recordings) are somehow entitled to unilaterally dictate how the recordings should be exploited. 3. The contents of the disputed audio recordings vary. However, as relevant here, the disputed recordings consist of Chris' vocal recordings for the musical works presently titled: "Ahead of the Dog," "Mermass," "Cancer," "Stone Age Mind," "Road Less Traveled," "At Ophion's Door," and "Orphans." Chris' vocal recordings for these seven musical works were recorded separately from the band (collectively, "Chris' Vocal Recordings").[1]

5. After rejecting Vicky's offer to share Chris' recordings according to Chris' wishes, the Defendants resorted to strong-arm tactics by withholding royalties undeniably owed to Chris' estate (on which Chris' three surviving children are dependent). Worse, Chris' former band members menaced Chris' family with false media statements intended to rile the cyber-stalkers who have been making vile online accusations and the real-life stalker, who was recently released from Federal prison after threatening Vicky's life. The band has broadcast public misinformation without regard for intensifying the hateful targeting of Chris' family, despite knowing that the family already needed FBI protection, and despite Vicky's pleas that they not make any future

---

[1] In their sworn interrogatory responses, the band members concede that – with the exception of one version of "Cancer" – Chris' Vocal Recordings were performed and recorded outside of their presence and were sent to them, upon completion, via demos. Moreover, there is no dispute between the parties as to who wrote the underlying compositions. *See* Ex. A (conceding that Chris wrote all seven songs, in whole or in part); *see also* Dkt. 43 (noting that the band does not deny Chris' authorship of the underlying compositions).

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

statements that would further endanger Chris' children. Even after being shown examples of the online hate directed towards Chris' children, Thayil persisted. By knowingly imperiling Chris' family with such callous cruelty, the former band members have revealed their monstrous avarice for the sound recordings which they neither created nor own. 4. In addition to exerting this financial pressure, Chris' former band members have menaced Chris' family with false media statements intended to rile the cyber-stalkers who have been making vile online accusations, as well as the real-life stalker, who was recently released from federal prison after being incarcerated for threatening Vicky's life. The former band members have publicly broadcast, as well as leaked, misinformation regarding Vicky to intensify the hateful targeting of Chris' family, in an attempt to weaken Vicky's resolve and have her relinquish Plaintiffs' rights in Chris' Vocal Recordings. The band members have encouraged and fomented these cyber-stalkers despite: (i) having been shown examples of the online hate directed towards Chris' children; (ii) pleas from Chris' minor children to quell the online harassment; and (iii) knowing that Chris' family has needed FBI protection and remains susceptible to physical harm. By knowingly imperiling Chris' family – including his children, who are still grieving from their father's death – with such callous cruelty, the former band members have revealed their monstrous avarice for Chris' Vocal Recordings.

5. The band members' shameful conduct towards Chris' family is consistent with their animus towards Chris, displayed when they failed to so much as turn around their tour bus upon learning of Chris' death and when they failed to check in with Chris' grieving family.[2]

6. All of Chris' copyright interests, including those embodied in Chris' Vocal Recordings, were bequeathed to Chris' Estate for the benefit of his widow, Vicky, and their minor children. Similarly, all of the rights in Chris' name, likeness, voice, portrait, photograph, and other

---

[2] The band members' disdain for Chris' family was confirmed in their Counterclaim, in which they emphasized that they would not have performed at Chris' Tribute Concert unless all proceeds were devoted to a charitable foundation (which they indisputably were), suggesting that the band was otherwise unwilling to lend support to Chris' family.

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   indicia of his identity ("Name and Likeness") are personal rights that belong to Chris and which
2   were bequeathed to Chris' Estate for the benefit of his widow, Vicky, and their minor children.

3          7.      Vicky long ago offered to share Chris' Vocal Recordings with the band, provided
4   that the final recordings were released in a way that would respect her late husband's legacy and
5   wishes (including to have his trusted producer involved in the process). The band refused,
6   however, on the erroneous contention that Chris' Vocal Recordings are somehow the sole property
7   of the Soundgarden partnership and that the band is entitled to unilaterally dictate how Chris'
8   Vocal Recordings should be utilized and commercially exploited. In the band's words, Chris'
9   family possesses zero rights in Chris' Vocal Recordings. (*See* Ex. A).

10         8.      After rejecting Vicky's offer to share Chris' Vocal Recordings according to Chris'
11  wishes, Defendants resorted to the above-described strong-arm tactics by withholding royalties
12  undeniably owed to Chris' Estate (on which Chris' three surviving children are dependent) and
13  rallying public animosity against Chris' family.

14         6. Vicky is reluctantly bringing this action because, despite 9. Vicky brings this action as a
15  last resort, as numerous attempts to work with the band on the release of Chris' sound recordings,
16  the band has refused to honor to ensure that Chris' Vocal Recordings are released in a manner that
17  honors Chris' legacy and wishes. Instead, they are continuing to coerce Vicky by egregiously
18  withholding monies due to her and Chris' children (even though Rit Venerus and the band
19  fraudulently assured Vicky that the monies would be paid to her). The band members' tortious
20  conduct towards Chris' family is consistent with their animus towards Chris, displayed when they
21  failed to so much as turn around their tour bus upon learning of Chris' death; failed to check in
22  with Chris's grieving family; and failed to so much as attempt to quell the online threats against
23  Chris' children. have failed. The band members insist that – the absence of any written agreement
24  notwithstanding – they solely own Chris' Vocal Recordings and can use the recordings and Chris'
25  Name and Likeness in any manner that they deem fit.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

7.10. Through this action, Vicky seeks to vindicate her late-husband's rights in the ~~sound~~disputed recordings ~~that he created~~, to recover the substantial sums of money and personal property that are being unlawfully withheld by Venerus and the band, and to emphatically answer the lyrical question her husband raised about his former bandmates, "how much more can they get?" NOTHING.

## II.  PARTIES, JURISDICTION, AND VENUE

**A.  The Parties**.

8.11. Plaintiff Vicky Cornell (hereinafter, "Vicky") is the widow of rock icon Christopher John Cornell (né Boyle) ("Chris"), and the Personal Representative of the Estate of Christopher John Cornell. Vicky married Chris in 2004, is the mother of their two minor children, and the primary source of financial support for ~~Cornell's~~Chris' first daughter from a prior marriage. Vicky ~~resides within the State of Florida and within this Court's district~~and Chris moved to the State of Florida in 2013. Even though Vicky and Chris have owned or rented other properties since 2013 (including a home in New York),[3] Florida has been Vicky's permanent and principal home since 2013. Vicky presently resides in Florida, is domiciled in Florida, and intends to remain domiciled in Florida.

9.12. Plaintiff, the Estate of Christopher John Cornell (the "Estate"), is Chris' estate. Chris was an internationally-renowned musician, singer, and songwriter, best known as the lead vocalist for the rock bands Soundgarden and Audioslave, with an octave-scaling voice and a signature vocal belting technique. Chris' last will and testament bequeathed his property, including his intellectual and personal property rights, to Vicky for the benefit of her and their children. The Estate has been probated in Florida, as Chris was domiciled in Florida at the time of his passing.

10.13. Defendant Soundgarden ~~purports to be~~is a Washington General Partnership, with its principal place of business in the State of Washington ("Partnership"). The Partnership was

---

[3] A certificate of occupancy for the New York home was not issued until October of 2016. Even after this date, flooding issues prevented the Cornell family from using their New York home.

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)—6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

never memorialized in a signed written agreement, and was created for the purpose of providing financial benefits. Soundgarden is also the name of the band (the "Band") formed in Seattle, Washington in 1984. The Partnership claims to be the owner of many of the Band's intellectual property rights, as well as many of its musical works. The Partnership, either directly or through authorized agents, sells, markets, promotes, streams, licenses, distributes, and otherwise exploits the Band's musical works through a variety of different media worldwide and throughout the United States, the State of Florida, and in Miami-Dade County media. The Partnership is also the owner, operator and/or licensor of the Band's website, which offers official Soundgarden merchandise for sale to citizens of the State of Florida. (See http://www.soundgardenworld.com/).

11.14. Defendant Kim Thayil ("Thayil") is an original Band member. Thayil was the lead guitarist and played in the Band from 1984 until the Band dissolved in 1997, and then again when the Band reformed in 2010 to the present date. Thayil is a purported partner in the Partnership.

12.15. Matt Cameron ("Cameron") became the Band's full-time drummer in 1986, and played with the Band through the balance of its first stint, and then again from 2010 to the present date. Cameron is a purported partner in the Partnership.

13.16. Ben Shepherd ("Shepherd") formally joined the Band in 1990 as a bassist, replacing original Band member, Hiro Yamamoto. Shepherd was a Band member from 1990 through 1997, and has been with the Band continuously since it regrouped in 2010. Shepherd is a purported partner in the Partnership.

14.17. Rit Venerus ("Venerus") has at all relevant times served as the Band's business manager. After Chris' passing, and prior to conspiring with the Partnership to unlawfully withholding monies owed to Plaintiffs, Venerus also rendered services to Plaintiffs by purporting, and continues to collect, oversee, and safeguard amounts owed to Chris' record and publishing royalties for Plaintiffs' benefit.

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

15.18.  Cal Financial Group ("Cal Financial") is Venerus' financial management firm, and purports to provide "comprehensive financial management for clients in the fields of entertainment and sports as well as high net worth individuals." (*See* https://www.calfinancialgroup.com/).

**B.    Jurisdiction and Venue**.

16.19.  This Court possesses subject matter jurisdiction over this action because this action arises, in part, under the Declaratory Relief Act, 28 U.S.C. § 2201 *et seq.*, and requests a declaration of rights arising under ~~F~~federal law. Specifically, Plaintiffs seek a declaration as to their copyright ownership, rights, and interests in connection with ~~specific sound recordings~~Chris' Vocal Recordings pursuant to 17 U.S.C. § 501 *et seq.*, over which ~~F~~federal courts have original jurisdiction. This action presents an actual case or controversy under Article III of the United States Constitution and serves the essential purpose of clarifying and settling the legal rights at issue.

17.20.  This Court possesses supplemental subject matter jurisdiction over the remaining claims in this action pursuant to 28 U.S.C. § 1367(a) because these claims are so related to claims in the action over which the Court has original jurisdiction that they form part of the same case or controversy.

18.21.  This Court additionally possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because, at all pertinent times, Vicky has been ~~a citizen of~~domiciled in Florida; the Estate, which has been probated in Florida, is domiciled in Florida; Defendants are ~~citizens of~~domiciled in different states (Washington and Virginia); and the ~~matter~~amount in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.

~~19.This Court possesses general jurisdiction over the Partnership, as well as Thayil, Cameron and Shepherd (collectively, the "Surviving Band Members"), as each has actively, regularly, systematically and continuously conducted business in the State of Florida and are, therefore, subject to the jurisdiction of this Court pursuant to Florida Statutes § 48.193(2). By way of example, and without limitation, the Partnership and Surviving Band Members have: (i) granted the rights to distribute musical works in Florida in exchange for royalty payments; (ii) entered into~~

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

license agreements for the exploitation of musical works, a film, and related merchandise in Florida; (iii) marketed and promoted musical works, a film and live performances in Florida; (iv) received royalties and payments generated from transactions with Florida residents; (v) offered merchandise for sale to Florida residents; and (vi) performed concert and live stage events throughout the State. 22.     This action was transferred to this Court from the United States District Court for the Southern District of Florida upon motions filed by: (i) the Partnership, as well as Thayil, Cameron, and Shepherd (collectively, the "Surviving Band Members"), and (ii) Venerus and Cal Financial Group (collectively, the "Financial Defendants"). In their Motion, the Financial Defendants expressly consented to this Court's exercise of jurisdiction over them. (*See* Dkt. 40).

20. Moreover, a considerable portion of the Partnership's business dealings have been regularly, systematically and continuously conducted business in the State of Florida, as Chris resided in this Court's district since 2011, and a number of the musical works for which the Partnership claims an ownership interest—including those that lie at the center of this dispute—were conceived, discussed, authored, created, produced, sent to and/or exchanged within this Court's district.

21. Additionally, this lawsuit arises from the Partnership and Surviving Band

Members' specific activities which were directed towards Florida residents and/or caused injury within the State of Florida, such that Partnership and Surviving Band Members are each individually subject to this Court's specific jurisdiction pursuant to Florida Statutes § 48.193(1).

22. As to Venerus, he oversees Cal Financial which, while headquartered in Charlottesville, Virginia, "provide[s] highly personalized services to clients from around the world," including the State of Florida. Venerus and Cal Financial regularly, systematically and

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

continuously conducted business with clients and third-parties, including Plaintiffs, in the State of Florida; have solicited business within the State of Florida; and, as described herein, conspired with the co-defendants to consciously elect to withhold amounts due to the Plaintiffs, thereby causing harm to the Plaintiffs in the State of Florida. Venerus and Cal Financial are subject to both general and specific jurisdiction in the State of Florida.

23. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) and 1400(a) because the Defendants are subject to personal jurisdiction in this district and therefore "reside" in this district, within the meaning of 28 U.S.C. § 1391(c). Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) as the payments due to Plaintiffs should have been paid in this district.

24.23.  All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived, or otherwise executed.

## III.   FACTUAL BACKGROUND

### A.   Chris Creates the Seattle-Centric Grunge Movement.

25.24.  In 1984, Chris (as vocalist and drummer) formed the Band alongside Thayil (guitar) and Hiro Yamamoto (bass). In 1985, Scott Sundquist joined the band as a drummer to enable Chris to concentrate on his vocals and rhythm guitar.

26.25.  Chris quickly emerged as the Band's chief songwriter, authoring virtually all of the compositions, (including the lyrics and melodies for the band)Band.

27.26.  With Chris at the helm as its front man and chief songwriter, the Band became the first grunge act to sign with legendary independent record label Sub Pop, and then earned the distinction of being the first grunge band to sign with a major label, inking a deal with A&M Records in 1989. The Band's major label debut, *Louder Than Love*, charted on the *Billboard 200* album chart, and the Band's videos from the album received substantial rotation on MTV.

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

28.27.  In 1991, after Shepherd replaced Hiro Yamamota as the Band's bassist, the Band recorded and released *Badmotorfinger*,[4] contemporaneously to Nirvana's *Nevermind* and Pearl Jam's *Ten*.[5] Anchored by Chris' unique vocals and compelling songwriting, *Badmotorfinger* eclipsed the platinum sales mark and quickly rose up the *Billboard* 200. Notably

28.  Unlike the creative process employed by most bands, Soundgarden's music was not created by Band members jamming in a studio. Instead, Chris worked separately from his Band members, sending them demos, which would include his vocal recordings or, at times, Chris' vocal recordings, together with Chris' playing the guitar or a rendition of the musical expression that he wished for his Band members to mimic.

29. Indeed, as Thayil has acknowledged, "a lot of the album [*Badmotorfinger*] was initiated by demo tapes that Chris sent to the band." *Badmotorfinger* was nominated for a Grammy Award for Best Metal Performance in 1992;1992, charted as one of the 100 top-selling albums of the year;, and ishas been hailed as one of the greatest rock albums of all time and as a genre-defining grunge album.[6]

29.30.  At the same time as *Badmotorfinger* was climbing the charts, Chris also recorded an album with his side project, called Temple of the Dog. Featuring seven solo compositions by Chris (including the hit single "Hunger Strike"), and grounded in Chris' distinctive vocal stylings, the album went on to sell more than a million copies.

30.31.  The confluence of the success of *Badmotorfinger*, Chris' Temple of the Dog side project, and the widespread public interest in the Seattle grunge movement (as memorialized in

---

[4] Before Shepherd joined the Band, the Band members equally split all writing credits in four even shares, even though Chris was the primary author of the compositions. This practice changed after Shepherd's arrival.

[5] "[W]hile Nirvana was the band that blew the roof off the 90s rock movement, Soundgarden were the ones that did the legwork." Greg Prato, "Soundgarden: 'We Never Got Used to the Success,'" Classic Rock (July 20, 2005).

[6] In April 2019, Badmotorfinger was ranked No. # 2 on Rolling Stone's "50 Greatest Grunge Albums."

FIRST AMENDED COMPLAINT (No. 2:20−cv−01218−RAJ−MAT)−11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1 ~~Prior to Shepherd's joining of the Band, the band members equally split all writing credits in four even shares, even though Cornell was the primary author of the compositions. This practice changed after Shepherd's arrival.~~

2 ~~"[W]hile Nirvana was the band that blew the roof off the 90s rock movement, Soundgarden were the ones that did the legwork." Greg Prato, *Soundgarden: "We Never Got Used to the Success*," Class Rock (July 20, 2005).~~

3 ~~In April 2019, *Badmotorfinger* was ranked No. # 2 on Rolling Stone's "50 Greatest Grunge Albums."~~

Cameron Crowe's Gen X film, *Singles*) transformed the Band into a commercial phenomenon.~~4~~7 By 1992, there were three Chris-related albums on the Billboard charts: *Badmotorfinger*, *Temple of the Dog*, and the *Singles* movie-soundtrack. Following *Badmotorfinger*, Chris led the Band on a series of immensely successful tours – first with 90s rock legends Guns N' Roses, then with Skid Row, and then at the 1992 Lollapalooza festival.

**B. Driven By Songs Written Solely By Chris, the Album *Superunknown* Launches the Band to Massive Critical and Commercial Success**.

~~31.~~32. In March of 1994, the Band released the album *Superunknown*. *Superunknown* debuted at ~~Number #~~number 1 on the *Billboard* 200, was praised by the critics, and went on to sell more than nine million copies worldwide.~~5~~8 Notably, the two biggest singles on *Superunknown* – "Spoonman" and "Black Hole Sun" – were penned solely by Chris (as were most of the songs on the album).

~~32.~~33. In 1996, following the success of *Superunknown*, the Band released the album *Down on the Upside*. Once again, the biggest singles from that album – "Burden In My Hand, " "Pretty Noose," and "Blow Up The Outside World" – were written solely by Chris.

---

7 *Singles* featured a soundtrack containing previously unreleased cuts from the Band, Pearl Jam, The Smashing Pumpkins, Alice in Chains, plus solo recordings from Chris under the name, Poncier.

8 *Superunknown* has been lauded by Rolling Stone as one of the "Greatest Albums" of all time.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**C.** **Chris' Success Transcends the Band Through His Work as a Solo Artist and ~~W~~with Audioslave.**

~~33.~~34.  In April of 1997, the Band announced that it was disbanding. However, Chris continued to realize critically-acclaimed success as both a songwriter and vocalist, both through his work as a solo artist and through his work as the lead singer of Audioslave.

~~34.~~35.  As a solo artist, Chris released three albums, including *Euphoria Morning*, which

~~4~~*Singles* ~~featured a soundtrack containing previously unreleased cuts from the Band, Pearl Jam, The Smashing Pumpkins, Alice in Chains, plus solo recordings from Cornell under the name, Poncier.~~

~~5~~*Superunknown* ~~has been lauded by~~ *Rolling Stone* ~~as one of the "Greatest Albums" of all time.~~has been described has been described as an "an alt-rock masterpiece."[6]9 Chris also composed and performed the critically-praised theme song to the 2006 James Bond film ~~"~~*Casino Royale*~~"~~ – the first and only American male solo artist to ever be commissioned to pen a theme song for the franchise.

~~35.~~36.  As he had done with the Band, Chris led Audioslave to great success. In fact, due in no small part to Chris' resonance as a vocalist and songwriter, Audioslave (which was also comprised of Tom Morello, Tim Commerford, and Brad Wilk) released numerous hit singles, including the songs "Like a Stone, " "Show Me How To Live," and "Be Yourself."

**D.** **Soundgarden Reunites While Chris Also Continues to Pursue His Successful Solo Career.**

~~36.~~37.  In 2010, after a decade -plus hiatus (during which Chris was the only member of the Band to maintain the level of success he had had as part of the Band), the Band regrouped and headlined the Lollapalooza festival. A month later, "Black Rain," the ~~b~~Band's first single since

---

[9] Corey Deiterman, "Euphoria Morning, Chris Cornell's Unexpected Masterpiece," Houston Press (Sept. 23, 2014).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1997 – with lyrics authored solely by Chris – was released. That single, which was featured in the video game *Guitar Hero: Warriors of Rock*, went platinum.

37.38. Over the next few years, the Band released a number of additional albums, while Chris also continued to perform as a solo act. However, due to competing commitments, the Band did not tour again until 2017.

38.39. In early 2017, the Band announced its return to the road, with a mixture of headlining gigs and previously announced festival sets. The 2017 tour launched on April 28 in Tampa, Florida. However, onin the early morning of May 17,18, 2017, after the Band's performance at the Fox Theatre in Detroit, Michigan, Chris was tragically found dead in his hotel room.

39.40. Upon hearing the news of Chris' tragic passing, the Surviving Band Members did not see the need to turn the tour bus around, or reach out to support Vicky or console Chris'

6Corey Deiterman, *Euphoria Morning*, Chris Cornell's Unexpected Masterpiece, Houston Press (September 23, 2014). children. Instead, they flew home, collected their money from the tour, and showed up for the very funeral to shed crocodile tears and falsely promise, "we'll always be there for the kids."

40.41. In September of 2017, Cameron told *Billboard* that the Band's surviving members had not yet made a decision about the Band's future.

41.42. A year later, Thayil reiterated to *Billboard* that the Surviving Band Members were still uncertain about the Band's future, as they were sensitive to honoring and preserving Chris' legacy and not cheapening the Band's brand.

**E.** **The Unreleased SoundChris Solely Creates His Vocal Recordings Recorded by Chris Prior to His Death.**

42.In 2017, while at his home in Florida, Chris recorded a number of unreleased sound recordings. At issue in this case are seven of those recordings, which were solely created by Chris on his laptop at his personal recording studio, known as TNC Studios (the "Unreleased

Sound Recordings"). 43.    In approximately 2015, Chris started recording his Vocal Recordings.

44.    Prior to his passing, Chris created a number of recordings from his home studio in Florida, including the unreleased and disputed Vocal Recordings.[10] As evidenced by countless documents, including emails in which the Surviving Band Members acknowledged hearing Chris' Vocal Recordings for the first time, Chris created the vocal recordings separate and apart from the Band. By way of example, upon receiving a demo containing the vocal recordings that Chris singularly created for the musical work now titled, *Ahead of the Dog*, Thayil wrote: "I love the verse vocals! I'm getting a feel for the shorter arrangement."

43.45.  Critically, there was never any agreement between Chris and the Band to treat the Unreleased Sound Chris' Vocal Recordings as property of the Band or the purported Partnership. Nor was there ever any writing assigning any of Chris' interest in the Unreleased Sound Chris' Vocal Recordings to the Band, the Surviving Band Members, and/or the Partnership. Rather, Chris was the sole and exclusive owner and copyright holder of the Unreleased Sound Chris' Vocal Recordings, which he created and fixed in a tangible medium of expression.

44.46.  As the legal beneficiaries of Chris' copyright interests, Plaintiffs are now the sole and exclusive owners of the Unreleased Sound Chris' Vocal Recordings that Chris created in 2017..

**F.    The Surviving Band Members Inquire About the Unreleased Sound Chris' Vocal Recordings.**

45.47.  In July 2017, the Surviving Band Members reached out to Vicky regarding the prospect of releasing producing Chris' Unreleased Sound Vocal Recordings and releasing them as part of a new Band album.

46.48.  In response, Vicky offered to voluntarily share the Unreleased Sound Chris' Vocal Recordings with the Band, provided that Chris' vision and music legacy were preserved. Specifically, Vicky requested that: (i) a producer that Chris trusted ("Trusted Producer") be

---

[10] While Chris' New York home also had a recording studio, that studio was not finished until late January 2017.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

involved in the production of the album, and (ii) she, as had historically been the case, be kept apprised of the marketing strategy for any forthcoming album. For Vicky, it was important that any album containing Chris' Vocal Recordings be held to the same high standards that Chris demanded for all of his vocal recordings.

47.49. The Band initially agreed to both of these requests, and the Trusted Producer and Cameron engaged in preliminary discussions about producing the new Band album which would incorporate Chris' Unreleased SoundVocal Recordings. In connection with these discussions, Vicky made the recordings available to the Trusted Producer.

50. The Band never requested that the Trusted Producer provide Chris' Vocal Recordings. In fact, the Band made no immediate attempt to secure Chris' Vocal Recordings.

48.However51. Instead, approximately a year later, the Band reneged on its agreement, informing. Specifically, on February 5, 2019, Cameron wrote to Vicky advising that the Band: (ai) was unwilling to commit to the Trusted Producer, (bii) would bring in "musicians and producers of [the Band's] choosing, and (ciii) was not willing to go "through any type of approval process."

49.52. After the Band reneged on its agreement to preserve and respect Chris' vision and legacy, the Band's shared legal counsel, Peter Paterno, suggested that, as a compromise, the Band should pick five proposed producers, from which Vicky could choose three. However, the Band rejected the compromise suggested by its own longtime attorney of over thirty years(and shared) legal counsel.

50.53. Although Vicky recommended that the parties meet to further discuss a potential resolution, the Band declined, and has since refused to engage in any meaningful discussions with Vicky that might provide for the mutually-agreeable use of Chris' Unreleased SoundVocal Recordings.

51.54. In March of 2019, the Partnership and Surviving Band Members announced a July 2019 release of the Band's episode of *Live from the Artists Den*, which presented the entirety of

FIRST AMENDED COMPLAINT (No. 2:20−cv−01218−RAJ−MAT)−16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the Band's February 2013 concert at Los Angeles' Wiltern Theater. *Live from the Artists Den* was released on CD, LP, and Blu-ray.

~~52. The film version of *Live from the Artists Den* was displayed on IMAX's theatres, including at the AutoNation IMAX Theater in Fort Lauderdale in 2019.~~

~~53. *Live from the Artists Den,* like all of the Band's other albums, are available to Florida residents for purchase, and can be streamed by Florida residents via an array of mediums, including Apple Music and Spotify.~~

**G.      Defendant Thayil Fabricates a Story About Chris' ~~Unreleased Sound~~Vocal Recordings.**

~~54.~~55.   In the summer of 2019, Thayil first claimed – falsely – that the Band had requested ~~the Unreleased Sound~~Chris' Vocal Recordings from Vicky but had been rebuked:

> We've asked nicely, we've suggested that this will benefit all parties, if the band could just have these files, and we could finish the songs we were working on. But there seems to be some confusion amongst various parties as to what that would entail and how that works, and who that would benefit. And it's been tiring, you know. And we can't move on until some future date when someone realizes the value of allowing the creative partners to have access to the material.[7][11]

Contrary to the specious reference to "songs we were working on," the ~~Unreleased Sound~~Band did not contribute in any way to Chris' performance of the Vocal Recordings ~~are comprised of musical works that *only* Chris authored, recorded, or otherwise "worked on."~~. As to the referenced "confusion amongst various parties," Thayil was well aware that Chris singularly created the ~~Unreleased Sound~~disputed Vocal Recordings, and was likewise aware that Vicky had already

---

[11] Nina Corcoran, "New Soundgarden Album Delayed Over Rights to Chris Cornell's Demos," *Entertainment News* (July 25, 2019), *available at* https://consequenceofsound.net/2019/07/soundgarden-new-album-delayed-chris-cornell-demos/.

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

offered to make these recordings available to the Band so long as they would be used pursuant to Chris' wishes and with respect for his legacy.

55.56.  In a November 1, 2019 interview on Sirius XM's Trunk Nation, Thayil continued to broadcast his false rhetoric, stating that it was "entirely possible" that another Soundgarden album would be released, as the Band "definitely has another record in us," and could easily finish an album based on the vocals written by Chris. "It would be ridiculous if [the Band]7https://consequenceofsound.net/2019/07/soundgarden-new-album-delayed-chris-cornell-demos/ didn't [release a new album]."812 When asked if there was an "obstacle stopping" the completion of the alleged unfinished Soundgarden album, Thayil frustratingly expressed: "There shouldn't be ....... other than the fact that we don't have those files." Thayil then added: "But, you know, these difficult things. Partnerships and property." The "property" to which Thayil referred is Plaintiffs' property. The "partnership" to which Thayil referred is an entity to which Defendants fictionally claim that Chris never assigned his copyright interests. The "definite" likelihood of "another record" to which Thayil referred is anything but definite: by the Band's own account, there are onlyat most seven recordingssongs, not enough for a full album.

**H.   ~~Defendants Claim They Own~~The Partnership Claims It Owns Chris' ~~Unreleased Sound~~Vocal Recordings, and Defendants Attempt to Strong-aArm Vicky by Withholding Money Intended for Chris' Children.**

56.57.  On November 14, 2019, counsel for the purported Partnership sent a demand letter to Plaintiffs outrageously claiming that *all* of the Unreleased SoundChris' Vocal Recordings, includingas well as "any recordings containing only the performances of Chris Cornell," belong exclusively to the Partnership. (A true and correct copy of the Demand Letter is attached hereto as Exhibit 1A).

57.58.  The Partnership and Surviving Band Members assert that neither Vicky nor the Estate possess any rights, interests, or copyright ownership in the Unreleased SoundChris' Vocal

12 *See* https://www.youtube.com/watch?v=wXY-trY1v24.

FIRST AMENDED COMPLAINT (No.
2:20-cv-01218-RAJ-MAT)-18

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Recordings. In their words, Vicky "simply has no ownership rights" in ~~the Unreleased Sound~~ Chris' Vocal Recordings.

~~58.~~59. The Partnership has not produced any partnership documents, much less any documentation signed by Chris, supporting their conclusory claims of ownership.[9] Neither the Partnership nor the Surviving Band Members ha~~s~~ve, for example, furnished any documents evidencing that Chris transferred ~~to the Partnership~~ his interests in and to his Vocal Recordings to the Partnership, or any other future works bearing Chris' copyrighted ~~Unreleased Sound Recordings~~ works ~~that he authored and fixed in a tangible medium of~~

~~8 See https://www.youtube.com/watch?v=wXY-trY1v24~~

~~9 Throughout their collaboration, the Band was governed, not by corporate documents, but on the spirit of "unanimity." The Band famously rejected a "majority" rule. If one Band member did not wish to do a tour, then the Band would not tour. This core principal governed important and mundane decisions, alike~~and expression.

~~59.~~60. Further, neither the Partnership nor any Surviving Band Member has – despite Chris' decorated history of working on solo projects even when he was a Band member – offered any support for their bald conclusion that ~~any of~~ Chris' performances contained within ~~the Unreleased Sound~~Chris' Vocal Recordings were created with the intention of being used for a Soundgarden project.

~~60. Likewise, there is no evidence that the Unreleased Sound Recordings, in which Chris and Chris alone authored the copyrightable elements, were ever intended to be anything but Chris' sole and exclusive property.~~

~~61.~~61. Throughout his career, both while a member and not a member of the Band, Chris produced ~~his own sound recordings~~musical works in his home studio. Consistent with this practice, ~~the Unreleased Sound~~many of Chris' Vocal Recordings ~~at issue~~ were recorded, in whole or in part, in Chris' home studio in Florida.

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

62. 62.  Even during his tenure as a Band member, not all of Chris' songs were created for the Band, as Chris often simultaneously created musical works for different ventures, including solo projects.

63.  This autonomy was not unique to Chris, as other Band members worked on musical projects outside of Soundgarden. In fact, due to his involvement with Pearl Jam, Cameron often did not perform at the Band's concerts.

64. Moreover, other Band members provided musical works for the Band's possible exploitation collaboration and contribution, and then withdrew such the musical works under claims of personal property. 63. In sharp refutation of the bald claims presently made by the Partnership and the Surviving In fact, throughout their collaboration (particularly after their reunification in 2010), the Band was governed, not by corporate documents, but on the spirit of "unanimity." The Band famously rejected a "majority" rule. If one Band member did not wish to tour, then the Band would not tour. This core principal governed important and mundane decisions, including whether a musical work, even one that all of the Band members contributed to, was to a "Soundgarden work."

65.  By way of example, on February 20, 2017, Shepherd wrote to Chris requesting that the Band "drop" "Mermass" – a song co-authored by Chris and Shepherd – "altogether." (A true and correct copy of Shepherd's February 20, 2017 email is attached hereto as **Exhibit B**).

66.  Shepherd's attempt to reclaim "Mermass" as his own personal work occurred *after* Shepherd presented the work to Soundgarden, after Chris wrote the lyrics, and *after* Chris had spent substantial time singularly recording countless versions of the vocals.

67.  This course of conduct demonstrates that each Band member retained the right to withdraw a musical work from the Band's consideration until the Band had finished producing – and actually released – a musical work. In simple terms, a musical work – even one in which all of the Band members may have contributed – did not become a "Soundgarden work" until all four of the Band members agreed that the musical work was to be Soundgarden property.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

68. The Partnership's Demand Letter assumes, wrongfully, that Chris agreed that all of his creations should be treated as Partnership property. Indeed, several years after the Band Members's reunification, Chris sent an email in March of 2013 to the Band's attorney, noting that he (Chris) was supposed to receive "a partnership agreement document to review before signing" but "that document never appeared for review." Chris further declared with crystal clarity why he would not sign any such document, as he was no longer willing to allow others to disproportionately profit from his creative labors.: "Please proceed with that in mind and not the stupid communist bullshit." The Partnership's Demand Letter assumes, wrongfully, that Chris agreed that all of his creations should be treated as Partnership property. However, Chris' last word on the matter was a blistering repudiation, and he made a point of separating *his* works from the Band's. **64.** Plaintiffs are the beneficiaries of Cornell's copyright interests and, thus, the lawful owner of the Unreleased Sound Recordings. Coincidentally, one of the Unreleased Sound Recordings is a love ballad which Chris wrote for and sent by email to his wife, Vicky. Accordingly, Vicky not only owns that song legally as Chris Cornell's beneficiary, she is also the real-world addressee of a love letter that Chris wrote for and delivered to her. 69. Chris never assigned his copyright interests in his Vocal Recordings to the Partnership. Moreover, Chris never assigned the rights to his Name and Likeness to the Partnership. Indeed, the ***unsigned***, four-page 1997 "Soundgarden Partnership Windup" memorandum – upon which the Partnership relies – does not mention, let alone include an assignment of Chris' copyright interests, Name and Likeness rights, or copyright interests in future vocal recordings.[13] To the contrary, the memorandum expressly provides that major issues, such any agreement relating to the Bands' musical works, should be subject to unanimity.

70. Further, Chris' last words on the topic were a blistering repudiation of the notion that his creative efforts, including his vocal recordings and recordings containing only his

---

[13] Moreover, the four-page memorandum provides that the "Soundgarden 'partnership' agreement" "is currently in draft form," and that the purpose was to create a "financial" partnership.

FIRST AMENDED COMPLAINT (No.
2:20–cv–01218–RAJ–MAT)–21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

performances, were to be treated as Partnership property. Moreover, Chris never transferred his copyright interests to the Partnership in accordance with 17 U.S.C. § 204. The Partnership's failure to secure a written assignment of Chris' copyright interests is fatal to its claim of copyright ownership.

71.     Plaintiffs are the beneficiaries of Chris' copyright interests and, thus, the lawful owner of Chris' Vocal Recordings.

72.     Plaintiffs are the beneficiaries of Chris' Name and Likeness rights and, thus, the lawful owner of Chris' Name and Likeness.

65.73. Instead of discussing or negotiating for the right to use Plaintiffs' property, the Partnership and Surviving Band Members have resorted to pressure tactics, harassment, unlawful conversion of royalties, and extortion.

66.74. The Partnership and Surviving Band Members have fabricated the false narrative that Vicky is wrongfully withholding the Unreleased Sound wrongfully withheld Chris' Vocal Recordings. Moreover, during the pendency of this litigation, Cameron falsely accused Vicky of suing him in connection with songs that he co-wrote – even though this lawsuit does not concern who wrote the underlying compositions contained in Chris' Vocal Recordings. To add insult to injury, this false narrative callously agitates the Band's rabid fan base even though Defendants know that stalkers have already the false narratives perpetrated by Cameron and the Surviving Band Members have – as intended – agitated the Band's fervent fan base, resulting in online harassment of Vicky and Chris' minor children. The Surviving Band Members have attempted to gain perceived settlement leverage by fomenting online harassment, including vile attacks made against Chris' minor children, despite knowing that stalkers have threatened the safety of Vicky and her children enough to require FBI intercession's family, resulting in the FBI incarcerating at least one stalker.

67.75. The Partnership and Surviving Band Members have prevailed upon and/or conspired with Venerus and Cal Financial Group to withhold amounts that were approved for

distribution and which are indisputably due and owing to the Estate. Amounts attributable to Chris' share of the ~~artist and publishing royalties~~earnings have been unlawfully withheld, without explanation or justification.

~~68.~~76.  The Partnership, Surviving Band Members, Venerus, and Cal Financial Group are wrongfully withholding ~~the royalty~~ amounts owed to Plaintiffs as a means of coercion to extort property that lawfully belongs to Plaintiffs.

## COUNT I
### (Declaratory Relief – Copyright Ownership)~~(~~
### (Plaintiffs Against the Partnership and Surviving Band Members)

~~69.~~77.  Plaintiffs re-allege and reincorporate the allegations in each of the preceding paragraphs as if fully set forth herein.

~~70.~~78.  As a result of the Partnership ~~and Surviving Band Members' threatened litigation~~'s pending counterclaim in which it seeks its own declaration as its rights in and to Chris' Vocal Recordings, there is a real and actual controversy between Plaintiffs, on the one hand, and the Partnership and Surviving Band Members, on the other hand, as to the parties' respective ownership, rights, and entitlements to ~~the Unreleased Sound Recordings. 71. The Unreleased Sound Recordings were created by Chris in this district, and are currently maintained in this Court's district. Moreover, to the extent that any claim of ownership raised by the Partnership or the Surviving Band Members is premised on materials that they purportedly provided to Chris, such materials were provided to Chris in the State of Florida.~~Chris' Vocal Recordings.

~~72.~~79.  The Partnership contends that all unreleased "music content," including "any recordings containing only the performances of Chris Cornell~~,~~" belong exclusively to the Partnership, and that Plaintiff~~s~~ possess no ownership rights in and to any of ~~the Unreleased Sound~~Chris' Vocal Recordings. (*See* Ex. ~~1~~A).

80.  The Partnership and Surviving Band Members' position is that Plaintiffs possess no ownership or interest in Chris' Vocal Recordings, including to "Stone Age Mind," even though

FIRST AMENDED COMPLAINT (No. 2:20–cv–01218–RAJ–MAT)–23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the Surviving Band Members admittedly did not make any contributions whatsoever to that Vocal Recording.

81.     Prior to his passing, Chris never consented to the final version of any of the unfinished musical works containing his Vocal Recordings.

82.     Prior to his passing, Chris never consented to having his Vocal Recordings be deemed Soundgarden works.

73.83. Plaintiffs inherited any interestall interests, rights, and title in and to all Cornell'sChris' copyrights pursuant to 17 U.S.C. § 201.

74.84. Plaintiffs dispute that there is a Partnership. Further, even if a Partnership existed, Chris neverChris ever assigned any of his copyright interests in and to Chris' Vocal Recordings to the purported Partnership or the Surviving Band Members.

85.     Plaintiffs further assert that Chris never assigned any of his copyright interests in and to Chris' Vocal Recordings to the Partnership or the Surviving Band Members as required by 17 U.S.C. § 204.

86.     Plaintiffs further assert that, to the extent that Chris intended to collaborate with the Band on the musical works embodied in Chris' Vocal Recordings, Chris retained at all times the right to withdraw his contributions to those musical works from the Band's consideration and to instead exploit his own creative works (including Chris' Vocal Recordings) as a solo artist or in other projects. Plaintiffs assert that, upon Chris' passing, they inherited all of Chris' rights in and to Chris' Vocal Recordings, including the right to withdraw his contributions to those musical works from the Band's exploitation.

87.     Chris' Vocal Recordings never became Partnership property.

75.88. Plaintiffs are entitled to a declaratory judgment decreeing that neither the Partnership nor Surviving Band Members possess any interest in the Unreleased SoundChris' Vocal Recordings that were solely authored by Chris.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

76.89. Plaintiffs are entitled to a declaratory judgment decreeing that the Partnership is not, as it claims, the sole owner of ~~the Unreleased Sound~~Chris' Vocal Recordings.

77.90. Moreover, in the event that any of ~~the Unreleased Sound~~Chris' Vocal Recordings are deemed to be joint works of authorship~~.~~ (or part of a joint work of authorship), Plaintiffs are entitled to a declaratory judgment decreeing that ~~the Estate possesses a copyright interest and an attendant~~: (i) the Partnership's position that Plaintiffs do not possess any interest in Chris' Vocal Recordings is incorrect, and (ii) Plaintiffs possess a copyright interest in Chris' Vocal Recordings and can exploit these recordings as they deem appropriate and/or Plaintiffs possess the right to share in the profits generated from any such joint works.

91.      Moreover, in the event that any of Chris' Vocal Recordings are deemed to be joint works of authorship (or part of a joint work of authorship), Plaintiffs are entitled to a declaratory judgment decreeing the parties' exact percentage of ownership based on, among other things, the parties' respective contributions to Chris' Vocal Recordings, including but not limited to whether any of the Surviving Band members made independently copyrightable contributions to Chris' Vocal Recordings.

78.92. Plaintiffs are entitled to an award of their attorneys' fees pursuant to 17 U.S.C. § 504, as the Surviving Band Members' pre-litigation position that Plaintiffs have no ownership rights in Chris' Vocal Recordings is legally unsustainable.

~~504.~~

79.93. The controversy between the parties is real and substantial (as evidenced by the declaratory relief action sought by the Partnership and Surviving Band Members in their Counterclaim) and demands specific relief through a decree of a conclusive character. ~~80.Further, Plaintiffs have a reasonable and real apprehension that they face future litigation from the Partnership and Surviving Band Members, who have characterized the matter as "time sensitive." (*See* Ex. 1).~~

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**COUNT II**
**(Declaratory Relief – Chris' Name and Likeness)**
**(Plaintiffs Against the Partnership and Surviving Band Members)**

94.     Plaintiffs re-allege and reincorporate the allegations contained in paragraphs 1-76 as if fully set forth herein

95.     An actual and justiciable controversy has arisen and now exists between Plaintiffs, on the one hand, and the Partnership and Surviving Band Members, on the other hand, as to the parties' respective rights to use Chris' Name and Likeness on a going-forward basis.

96.     Chris never assigned the rights to his Name and Likeness to the Partnership.

97.     Chris never assigned the rights to his Name and Likeness to any of the Surviving Band Members.

98.     To the extent that Chris did assign his Name and Likeness to the Partnership or to any third-parties, those licenses terminated upon Chris' death as a matter of law. To the extent that the Partnership wished to secure the right to use Chris' Name and Likeness after his death, it could have and should have secured those rights. It failed to do so.

99.     Plaintiffs are the beneficiaries of Chris' Name and Likeness and, thus, the lawful owners of Chris' Name and Likeness.

100.    As the lawful owners of Chris' Name and Likeness, Plaintiffs are singularly entitled to grant licenses for the use of Chris' Name and Likeness.

101.    During the pendency of this action, the Partnership and Surviving Band Members have secured trademarks in and to the mark, "Nude Dragons." Nude Dragons is an anagram for Soundgarden, and the name that the Band used when they played their first reunion show in Seattle in 2010.

FIRST AMENDED COMPLAINT (No. 2:20−cv−01218−RAJ−MAT)−26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

104.    During the pendency of this action, the Surviving Band Members have used Chris' Name and Likeness to promote Nude Dragon's social media accounts, which benefit them individually and to sell trademarked goods for their own personal gain.[14]

105.    During the pendency of this action, the Partnership and Surviving Band Members have used Chris' Name and Likeness to promote Nude Dragons – a "new" band which the Surviving Band Members formed in order to perform future live performances and circumvent their obligations to pay Plaintiffs their twenty-five (25%) interest in the Partnership's touring revenue.[15]



_____

[14] The Surviving Band Members have secured trademarks in order to sell Nude Dragon duffel bags, scrapbooks, posters, paper products, and ponchos for their own personal benefit. (*See* U.S. Reg. Nos. 8843968, 88439675 & 88429701).

[15] While the Surviving Band Members have the right to create a new band, they cannot: (i) promote a "new" band by leveraging the Soundgarden name and using photos that prominently feature Chris, nor (ii) conduct a "Soundgarden tour" by playing Soundgarden music without paying Vicky her share of the Partnership proceeds.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

106.    The Partnership and Surviving Band Members have used Chris' Name and Likeness, without license or authorization.

107.    Plaintiffs seek a judicial determination and declaration that neither the Partnership nor the Surviving Band Members are entitled to use Chris' Name and Likeness without obtaining a license from Plaintiffs.

108.    Plaintiffs further seek a judicial declaration that the Partnership and Surviving Band Members have infringed upon the Plaintiffs' rights in Chris' Name and Likeness by using Chris' Name and Likeness for the purposes of advertising and promoting their products, merchandise, goods, services, and social media accounts in violation of Florida Statute Section 540.08 and/or Washington Personality Rights Acts, RCW 63.60.050 *et seq*.

109.    Plaintiffs have been harmed as a direct and proximate result of the Partnership's and Surviving Band Members' violations of Florida Statute Section 540.08 and/or RCW 63.60.050, and are entitled to recover damages from defendants pursuant to these statutes, including any profits of defendants attributable to their infringement of Plaintiffs' rights in Chris' Name and Likeness.

110.    The controversy between the parties is real and substantial (as evidenced by the declaratory relief action sought by the Partnership and Surviving Band Members in their Counterclaim) and demands specific relief through a decree of a conclusive character.

111.    A judicial declaration of the parties' respective rights, entitlements, and obligations with respect to Chris' Name and Likeness is necessary and appropriate.

## COUNT III
**(Equitable Accounting)(**
**(Plaintiffs Against the Partnership and Surviving Band Members)**

~~81.~~112. Plaintiffs re-allege and reincorporate the allegations contained in ~~each of the preceding~~ paragraphs 1 through 76 as if fully set forth herein.

FIRST AMENDED COMPLAINT (No. 2:20–cv–01218–RAJ–MAT)–28

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

82.113. The Partnership and Surviving Band Members have refused to provide an accounting and have refused to provide Plaintiffs with the necessary records and back-up documentation and materials needed for Plaintiffs to complete an accounting relating to the amounts owed to Plaintiffs from, among other sources, their share of artist royalties, publishing royalties, and the sale of merchandise.

83.114. The Partnership and Surviving Band Members assert that Vicky and the Estate are not entitled to any "access to the band's transactions, or to inspect or copy the band's books and records." (*See* Ex. 1A).

84.115. However, as the lawful and beneficiary owners of Chris' copyright interests and Chris' share of the artist royalties, publishing royalties, and revenue generated by the sale of merchandise, Plaintiffs are minimally entitled to an equitable accounting of all profits, revenues, and other financial consideration obtained by Partnership and Surviving Band Members.[16]16 85.The accounting statements should have been furnished to Plaintiffs in the State of Florida.

86.116. Given the volume and complexities of the Band's dealings, as well as the fact thatand because the essential financial records are in the exclusive control of the Partnership and Surviving Band Members, an equitable accounting is needed. Without an equitable accounting, Plaintiffs' remedies at law are inadequate, and the Partnership and Surviving Band Members will benefit from an incomplete financial picture.

---

[16] Further, to the extent that the Partnership's stated position is that Vicky is merely a "transferee" of Chris' transferrable Partnership interests (which is incorrect), she is entitled to discover whether the Surviving Band Members are improperly using amounts payable to the Estate to pay the Partnership's debts and liabilities, including the amounts used to pay the Surviving Band Members' and the Financial Defendants' respective legal fees.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**COUNT ~~III~~IV**
**(Conversion – Chris' Royalties)** ~~(~~
**(Plaintiffs Against All Defendants)**

~~87.~~117. Plaintiffs re-allege and reincorporate the allegations contained in ~~each of the preceding~~ paragraphs 1 through 76 as if fully set forth herein.

~~88.~~118. In a heavy-handed attempt to force Vicky to relinquish custody of ~~the Unreleased Sound~~Chris' Vocal Recordings and to accept that neither she, her children, nor the Estate possess any interest in ~~the Unreleased Sound~~Chris' Vocal Recordings, the Partnership and Surviving Band Members have either prevailed upon or conspired with Venerus and Cal Financial to withhold amounts that are indisputably due and owing to the Estate.

119. Specifically, the Partnership ~~and,~~ the Surviving Band Members ~~have prevailed upon,~~ Venerus, and Cal Financial ~~to~~have withheld hundreds of thousands of dollars. ~~10Further, to the extent that the Partnership's stated position that~~ Vicky ~~is merely a "transferee" of Chris' transferrable partnership interests, she is entitled to discovery whether the Surviving Members are improperly using amounts payable to the Estate to pay Partnership's debts and liabilities.~~ which they acknowledged were owed to Plaintiffs and which they approved for distribution.

~~89.~~120. Fearful that the Partnership and Surviving Band Members would resort to ugly heavy-handed tactics and withhold money owed to Chris' minor children, Vicky wrote to Venerus and other members of Cal Financial in August of 2019:

> Just one concern – if payments are directed to [the purported Partnership] and somehow mine are held hostage by other band members refusing to allow [Venerus] to pay me then I'm not ok with that [~~sic~~] ~~please~~[P]lease confirm no will one will hold up my money[.]

(A ~~...(A~~ true and correct of the parties' August 2019 email is attached hereto as **Exhibit ~~2~~C**).

~~90.~~121. Venerus responded: "I don't see any issue from my end with the estate being paid their [sic] share provided that each party would then be responsible for any commissions due on

FIRST AMENDED COMPLAINT (No. 2:20−cv−01218−RAJ−MAT)–30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

their share and pro-rata legal costs." To this end, on October 11, 2018, Venerus confirmed that $315,000.00 had been approved to be distributed and was going to be distributed to the Plaintiffs ("Approved Funds").

122.   For his part, ~~Paterno confirmed~~Peter Paterno, then the Band's shared legal counsel, ratified the Partnership's approval of the distribution of the Approved Funds, confirming on August 20, 2019: "**The band understands Vicky must be paid**." (*Id.*) (emphasis added).

~~91.~~Despite the Band's admitted understanding that Vicky "must be paid," and despite the fact that amounts that belong to Plaintiffs were admittedly received in August 2019, Defendants have conspired to exercise 123.      Despite the Partnership's approval of the distribution of the Approved Funds and its attorney's confirmation of the distribution of the Approved Funds, Defendants have wrongfully changed course, exercising wrongful dominion and control over ~~Plaintiffs' property,~~the Approved Funds and refus~~e~~ing to pay Plaintiffs the Approved Funds.

~~92.~~124. Despite their demand, Plaintiffs have not received the Approved Funds, or any other amounts due and owing to them. When last requested, Venerus referred Vicky to the Partnership's and the Surviving Band Members' attorneys, including the attorneys that sent the November 14, 2019 demand letter. Worse still, while Venerus has refused to pay Plaintiffs the Approved Funds (claiming that all funds approved for distribution had been frozen), Cal Financial has nevertheless used the same "frozen" funds to pay the Surviving Band Members' attorneys' fees in this lawsuit. Thus, rather than segregating and preserving the Approved Funds due and owing to Plaintiffs, and approved to be paid to Plaintiffs, Venerus and Cal Financial have – together with Partnership and Surviving Band Members – converted Approved Funds (as well as other Partnership funds) by paying them, in whole or in part, to the Partnership's and the Surviving Band Members' attorneys in order to fund their defense.

~~93.~~125. Defendants' refusal to relinquish the ~~amounts indisputably owed~~Approved Funds to Plaintiffs have caused injury to Plaintiffs ~~in the State of Florida~~.

FIRST AMENDED COMPLAINT (No.
2:20-cv-01218-RAJ-MAT)-31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

94.126.  Plaintiffs are entitled to restitution from Defendants of, and imposition of a constructive trust on, Plaintiffs' share of the Approved Funds as well as all revenues earned by the Partnership and the Surviving Band Members.

**COUNT** ~~IV~~V

**(Breach of Fiduciary Duty)**

**(Plaintiffs Against Venerus and Cal Financial)**

127.  Plaintiffs re-allege and reincorporate the allegations contained in paragraphs 1 through 76, as well as paragraphs 117 through 126, as if fully set forth herein.

128.  While Chris was alive, Vicky often served as Venerus' point person in dealing with Soundgarden-related matters. Venerus and Vicky built a relationship of trust, in which Venerus would look out for Vicky's interests (separate and apart from Chris' interests).

129.  Chris passed away on May 18, 2017.

130.  Upon Chris' passing, Venerus assured Vicky that he and Cal Financial could continue to faithfully and dutifully discharge their obligations to the Partnership as well as to Vicky and Chris' children.

131.  Based on Venerus' assurances and Vicky's prior dealings with Venerus, Vicky reasonably did not issue letters of direction or otherwise take any actions to ensure that funds to be paid to Plaintiffs, including but not limited to revenues from *Live from the Artists Den*, were segregated or otherwise not entrusted to Venerus and Cal Financial.

132.  At all times after Chris' tragic passing, a fiduciary relationship existed between Plaintiffs, on the one hand, and Venerus and Cal Financial, on the other hand, because Plaintiffs depended on Venerus and Cal Financial to properly advise and counsel them and to act in their best interests, with honesty and fairness. Moreover, Venerus and Cal Financial were in a superior position to exert unique influence over Vicky, and Venerus' and Cal Financial's unique relationship with Vicky induced Vicky to relax the care and vigilance which she would typically exercise for her own protection.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

133.    Venerus and Cal Financial knew that Vicky was depending on them to safeguard Plaintiffs' interests and to loyally serve Plaintiffs' interests without conflict, as they had done during Chris' lifetime and after Chris' passing. In particular, Venerus and Cal Financial were aware that Plaintiffs were trusting them to segregate, safeguard, and otherwise preserve the Approved Funds.

134.    As a result of Venerus' and Cal Financial's assurances and actions – and given the nature of the parties' relationships after Chris' passing in 2017 – Plaintiffs reposed trust and confidence in Venerus and Cal Financial.

135.    A fiduciary relationship existed between Plaintiffs on the one hand, and Venerus and Cal Financial, on the other hand. That fiduciary relationship gave rise to a duty of care on the part of Venerus and Cal Financial to Plaintiffs.

136.    Venerus and Cal Financial have breached their fiduciary duties to Plaintiffs through numerous acts and omissions, including, among other things: (i) failing to disclose their conflict of interest; (ii) making false assurances to Vicky that they would be able to safeguard the amounts owed to Plaintiffs, including but not limited to the Approved Funds; (iii) failing to properly safeguard the Approved Funds; (iv) falsely claiming that the Approved Funds would be paid to Plaintiffs; (v) falsely claiming that all amounts, including the Approved Funds, had been frozen and then remitting amounts to the Partnership and the Surviving Band Members, without notification; (vi) attempting to conceal their payment of the alleged frozen funds to the Partnership and the Surviving Band Members; and (vii) concealing other relevant and material facts.

137.    As a direct and proximate result of Venerus' and Cal Financial's breaches of their respective fiduciary duties, Plaintiffs have sustained damages in an amount to be determined at trial.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## COUNT VI
### (Conversion – Chris' Personal Property) (
### (Plaintiffs Against the Partnership and Surviving Band Members)

95.138. Plaintiffs re-allege and reincorporate the allegations contained in each of the preceding paragraphs 1 through 76, as if fully set forth herein.

139. After Chris' passing, the Partnership and Surviving Band Members returned a number of Chris' personal items, including his guitars and related equipment.

140. On several occasions, including as recently as September of 2019, the attorney for the Estate requested that the Partnership and Surviving Band Members provide an inventory of all the personal property that belonged to Chris and which Chris stored at the Pearl Jam warehouse space, together with the Partnership's other property.

96.141. The Partnership and Surviving Band Members have exercised wrongful dominion and control over Chris' personal property, as well as his share of the Band's effects, including, through their representatives, declined to provide the requested inventory and blithely responded that all of Chris' personal property had been previously returned to Vicky.

142. Plaintiffs have reason to believe that not all of Chris' personal property has been returned. Specifically, Plaintiffs believe that the Pearl Jam warehouse space (and possibly other places) contain Temple of the Dog-related items, including archival and video footage that belongs to Chris, as well as other equipment, vintage merchandise, historical point of sale materials, promotional CDs, gold and platinum records, awards, Temple of the Dog-related items, cassette tapes, photos, and related materials which belong exclusively to Chris (collectively, "Chris' Personal Property").

97. The Band's equipment and related items has been valued and insured in the amount in excess of six hundred thousand dollars (U.S. $600,000.00). Plaintiffs have been charged and paying a portion of the insurance premiums. To the extent that the purported Partnership exists in the manner that the Partnership and Surviving Band Members claim, Plaintiffs are minimally

entitled to Chris' share of these items.143.   By refusing to provide an inventory of the storage space, the Partnership and Surviving Band Members have exercised wrongful dominion and control over Chris' Personal Property.

98.144. Despite Plaintiffs' demand, the Partnership and Surviving Band Members have refused to transfer or other relinquish Chris' Personal Property to Plaintiffs,.

99.145. The Partnership and Surviving Band Members refusal to turn over Chris' Personal Property to Plaintiffs has caused injury to Plaintiffs in the State of Florida.

100.146. Plaintiffs are entitled to restitution from the Partnership and Surviving Band Members of, and imposition of a constructive trust on, Chris' Personal Property.

<strong>COUNT V (Unjust Enrichment)</strong><br><strong>(Against the Partnership and Surviving Band Members)</strong>

101.Plaintiffs re-allege and reincorporate the allegations in each of the preceding paragraphs as if fully set forth herein.

102.Plaintiffs conferred a benefit upon the Partnership and the Surviving Band Members, allowing them to continue to collect the full balance of amounts owed from artists royalties, publishing royalties and merchandise sales, despite the fact that a portion of these portions belong to Plaintiffs. Plaintiffs have further conferred a benefit on the Partnership and the Surviving Band Members, permitting to them to continue to exploit Chris' name and likeness in order to generate revenue for all of the Surviving Band Members' benefit. Plaintiffs have further conferred a benefit on the Partnership and the Surviving Band Members by paying a portion of the insurance premiums used to insure the Band's equipment.

103.The Partnership and the Surviving Band Members knew of the benefits that have been conferred upon them, voluntarily accepted those benefits, and have consciously chosen to

retain those benefits without paying Plaintiffs the respective share owed to Vicky and payable to Chris' minor children through the Estate.

**104.** The Partnership and the Surviving Band Members have also improperly retained Chris' Personal Property, including but not limited to: equipment, memorabilia and personal effects, much of which remains in storage.

**105.** The circumstances are such that it would be inequitable for the Partnership and the Surviving Band Members to retain the benefits conferred upon them without first paying Plaintiffs.

**106.** As a proximate result of the foregoing, Defendants have unjustly received and retained benefits at the expense of Plaintiffs. Consequently, Plaintiffs are entitled to restitution from the Partnership and the Surviving Band Members of, and imposition of a constructive trust on, Plaintiffs' share of all revenues earned by the Partnership and the Surviving Band Members in exploiting works in which Plaintiffs possesses an ownership interest, as well as to all of Chris' personal property that passed to Plaintiffs through Chris' will.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court enter a judgment in their favor and against the Defendants:

1. Awarding actual and compensatory damages for Defendants' respective wrongdoing in an amount to be established at trial, together with pre-judgment and post- judgment interest thereon at the maximum legal rate;

2. Declaring that Plaintiffs are the sole and exclusive ~~owner of the Unreleased Sound~~owners of Chris' Vocal Recordings;

3. Declaring that the Partnership is not the sole and exclusive owner of ~~the Unreleased Sound~~Chris' Vocal Recordings and/or that ~~the~~ Plaintiffs possesses an ownership interest and

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-36

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

entitlement to share in the profits of ~~the Unreleased Sound~~Chris' Vocal Recordings as a copyright co-owner;

4.      Declaring that Plaintiffs are the sole and exclusive owners of Chris' Name and Likeness, and enjoining the Partnership, the Surviving Band Members, and their respect agents, servants, employees, officers, attorneys, successors and assigns, and all persons acting in concert with them or on their behalf, in this and other all judicial districts in the United States, preliminarily, during the course of this litigation and permanently from: (a) manufacturing, distributing, selling, offering for sale, holding for sale, or advertising any products or merchandise bearing Chris' Name and Likeness or any colorable variation thereof (collectively, "Unauthorized Merchandise"); (b) representing that any Unauthorized Merchandise manufactured, distributed, sold, offered for sale, or advertised by them is sponsored or authorized by Plaintiffs in this district or in any other district in which Plaintiffs seek to enforce this Court's order; and (c) using Chris' Name and Likeness to promote Nude Dragons, including but not limited to in connection with any Nude Dragons' social media accounts.

5.      Ordering the Partnership and the Surviving Band Members to deliver for destruction all Unauthorized Merchandise bearing Chris' Name and Likeness, to pay to Plaintiffs damages in an amount to be determined based upon Plaintiffs' loss of income from the Partnership's and the Surviving Band Members' unauthorized use of Chris' Name and Likeness, and to pay Plaintiffs their attorneys' fees and costs pursuant to RCW 63.60.060(5).

6.      Entering a decree granting Plaintiffs access to the Partnership's books and records, and ordering an accounting from Defendants of all revenue: (a) earned from the exploitation of the Band's musical works, including *Live from the Artists Den*; (b) received pursuant to the Band's recording ~~agreements,~~and publishing agreements, and from digital service providers, SoundExchange, and other exploitations of the Band's musical works; and (c) generated from Soundgarden-related intellectual property, merchandise, and related products, including those products made available on the official Soundgarden website;

5.7. Entering a decree granting Plaintiffs access to Venerus' and Cal Financial's books and records, and ordering an accounting of all revenue earned from the exploitation of the Band's musical works, including all revenue received pursuant to the Band's recording agreements,and publishing agreements, and from digital service providers, SoundExchange, and other exploitations of the Band's musical works, intellectual property, merchandise, and related products, including those products made available on the official Soundgarden website;

6.8. Ordering the Partnership to permit Plaintiffs to inspect all of the storage units in which Cornell'sChris' personal belongings are being held and/or to account to the Estate for these items;

7.9. Disgorging from the Partnership and the Surviving Band Members, Plaintiffs' share of all revenue wrongfully withheld by the Defendants;

8.10. Imposing a constructive trust on Plaintiffs' share of all revenue and property wrongfully withheld by Defendants;

9.11. Awarding Plaintiffs their costs and reasonable attorneys' fees; and

10.12. Awarding such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 9, 2019 Miami, Florida Respectfully submitted,

DATED: October __, 2020

By:  s/ William C. Rava
William C. Rava #29948
Alison R. Caditz #51530
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Email: WRava@perkinscoie.com
Email: ACaditz@perkinscoie.com

David Binder Jonelis
Martin D Singer
**Lavely & Singer**
2049 Century Park East, Suite 2400
Los Angeles, CA  90067

FIRST AMENDED COMPLAINT (No. 2:20-cv-01218-RAJ-MAT)-38

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Telephone:  310.556.3501
Email: djonelis@lavelysinger.com
Email: mdsinger@lavelysinger.com

James George Sammataro
**Pryor Cashman LLP**
201 South Biscayne Blvd., Suite 2700
Miami, FL  33131
Telephone: 786.582.3010
Email: jsammataro@pryorcashman.com

*Attorneys for Plaintiffs*

PRYOR CASHMAN LLP

*Attorneys for Plaintiffs*

201 South Biscayne Boulevard, Suite 2700
Miami, Florida 33131 Telephone: (786) 582-
3010 Facsimile: (786) 582-3004

By: s/ *James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
jsammataro@pryorcashman
.com

LAVELY & SINGER PROFESSIONAL
CORPORATION

*Attorneys for Plaintiffs*

2049 Century Park East, Suite 2400
Los Angeles, CA 90067 Telephone:
310-556-3501 Facsimile: 310-556-
3615

Martin D. Singer (*pro hac vice*
application forthcoming)
mdsinger@lavelysinger.com
David Jonelis, Esq.
(*pro hac vice* application forthcoming)
djonelis@lavelysinger.com

Document comparison by Workshare 9 on Monday, November 2, 2020 2:14:33 PM

| Input: | |
|---|---|
| Docume nt 1 ID | file://\\perkinscoie\All\Groupdata\Document_Processing\CSM\CS00337 01\Original\Original Compl. (Dkt. 1).pdf |
| Descripti on | Original Compl. (Dkt. 1) |
| Docume nt 2 ID | file://\\perkinscoie\All\Groupdata\Document_Processing\CSM\CS00337 01\Original\Cornell _ Soundgarden - First Am. Compl. (WDWA).DOCX |
| Descripti on | Cornell _ Soundgarden - First Am. Compl. (WDWA) |
| Renderi ng set | Perkins |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 512 |
| Deletions | 366 |
| Moved from | 34 |
| Moved to | 34 |
| Style change | 0 |
| Format changed | 0 |

| Total changes | 946 |
|---|---|

# EXHIBIT 1A

November 14, 2019

Mark Goodman, CPA
Gelfand, Rennert & Feldman, LLC
1880 Century Park East, #1600
Los Angeles, CA 90067
Email:

Peter T. Paterno, Esq., Brent A. Canter, Esq.
King, Holmes, Paterno & Soriano, LLP
1900 Avenue of the Stars
Twenty Fifth Floor
Los Angeles, CA 90067
Emails:

Martin Singer, Esq.
Lavely & Singer
2049 Century Park East
Suite 2400
Los Angeles, CA 90067
Email:

Michael B. Singer
Comiter, Singer, Baseman & Braun
3801 PGA Blvd, Suite 604
Palm Beach Gardens, FL 33410
Email:

***VIA EMAIL AND FEDERAL EXPRESS***

**Re:**    ***Demand for Return of Soundgarden Audio Files***

Dear Counsel and Representatives of Vicky Cornell:

As at least some of you know, this law firm represents Soundgarden, a Washington General Partnership. We are delivering this letter to all of you given our uncertainty as to the appropriate representative to address and coordinate the issues set forth herein.

We have been informed by our clients that your client, Vicky Cornell, is in possession of certain audio files belonging to Soundgarden ("Soundgarden files"). The Soundgarden files were stored on at least one laptop hard drive that was in Chris Cornell's possession at the time of his tragic passing. Mr. Cornell had been working on the files in a collaborative effort with the other members of Soundgarden, and the entire band was feeling very positive about their rekindled artistic energy and creativity. We understand that, unfortunately, most or all of the Soundgarden files are unique (*i.e.*, not stored elsewhere in a form accessible to the Soundgarden partners).

We understand that the Soundgarden files consist of any number of files, but include the following known master recordings, which may exist in multiple forms (e.g., from demo and

rough recordings, to more polished versions). To be clear, it is Soundgarden's position that any music content (instrumental and/or vocals, demos or rough recordings) stored on the hard drive by any or all members of Soundgarden (including any recordings containing only the performances of Chris Cornell intended for Soundgarden) constitutes Soundgarden partnership property:

| Title | Finished Vocals | Songwriters | Running Time |
|-------|-----------------|-------------|--------------|
| Road Less Travelled | Yes | Chris Cornell/Matt Cameron | 4:10 |
| Orphans | Yes | Chris Cornell/Matt Cameron | 3:18 |
| At Ophians Door | Yes | Chris Cornell/Matt Cameron | 5:05 |
| Cancer | Yes | Chris Cornell | 4:00 |
| Stone Age Mind | Yes | Chris Cornell | 4:22 |
| Ahead of the Dog | Yes | Chris Cornell/Kim Thayil | 3:47 |
| Merrmas | Yes | Chris Cornell/Ben Shepherd | 4:32 |

By this letter, Soundgarden demands that Ms. Cornell return the Soundgarden files to Soundgarden.

We are hopeful that this issue can be resolved easily and voluntarily. We do note that this formal demand letter follows several previous attempts to obtain the Soundgarden files from Ms. Cornell. For example, we understand that Matt Cameron and Ms. Cornell engaged in a series of text messages in late January and early February 2019 in which Ms. Cornell acknowledged her custody of the Soundgarden files and stated that "I will have to sort a time to have the hard drive sent back to Tom so he can extract the SG files to send to you." We understand from subsequent emails that Ms. Cornell discussed returning the Soundgarden files with Peter Paterno in February 2019. However, the Soundgarden files were never returned to Soundgarden.

Matt Cameron again requested return of the Soundgarden files by email to Ms. Cornell in late July 2019. Ms. Cornell's response to this request was to take the position, in an email dated July 27, 2019, that she "will not release anything without proper set up and without say in the management..."

With respect, and again for the sake of clarity, this is not a legally justifiable position. Ms. Cornell has no valid standing or other basis to retain partnership property to the exclusion of Soundgarden, or to condition her return of such property. Under Washington general partnership

law, Ms. Cornell is not even a partner in Soundgarden, but following Mr. Cornell's passing is considered a "transferee" of Mr. Cornell's "transferable interest" in the partnership.[1] Ms. Cornell therefore has no associated management or other such partnership rights.[2]

Ms. Cornell simply has no ownership rights in this partnership property.[3] Indeed, pursuant to Washington law, even full partners are not considered co-owners of partnership property and have no legally recognized interest in partnership property which is transferrable, either voluntarily or involuntarily.[4] Property acquired by the partnership is property of the partnership and not of the partners individually.[5] A partner may use or possess partnership property only on behalf of the partnership.[6]

We trust that you agree that this is a time-sensitive and important matter . Ms. Cornell's custody of the Soundgarden files - which are important partnership intellectual and artistic property – although perhaps-well intended, is improper, and Ms. Cornell clearly has no right to retain this property, or to attempt to leverage this unfortunate circumstance against Soundgarden to obtain concessions or benefit to which she is not otherwise legally entitled.

Under the circumstances, Soundgarden demands that the Soundgarden files be returned within seven (7) days. I am available to discuss with the coordinating representative the technical manner of transfer.

I look forward to hearing back confirming your client's agreement at the earliest opportunity.

Very truly yours,

Ray Garcia, Esq.

cc:   Jill Berliner, Esq.
      Matt Cameron
      Ben Shepherd
      Kim Thayil
      Jerome Crooks

---

[1] *See* Washington's Revised Uniform Partnership Act ("RUPA"), codified in Chapter 25.05 of the Revised Code of Washington ("RCW"), RCW 25.05.210(1)(c). This "transferable interest" entitles Vicky Cornell to (i) Chris Cornell's share of partnership profits and losses, and (ii) Chris Cornell's right to receive distributions to which he would have been entitled. *See* RCW 25.05.205.
[2] *See* RCW 25.05.150(9). Specifically, Vicky Cornell is not entitled to participate in the management or conduct of the band's business, to access information about the band's transactions, or to inspect or copy the band's books or records. *See* RCW 25.05.210(1)(c).
[3] *See* RCW 25.05.150(9).
[4] *See* RCW 25.05.200.
[5] *See* RCW 25.05.060.
[6] *See* RCW 25.05.150(7).

# EXHIBIT ~~2~~ <u>B</u>

**From:**                   H.B. Shepherd
**Sent:**                   Monday, February 20, 2017 8:54 PM
**To:**                       Christopher Cornell
**Subject:**              Re: Mermass demo

That song was roughly a song to my Dad and now its a song to Noah that i have to finish.
Id rather Soundgarden drop it altogether lm sorry but thats how i feel - its been haunting me for years.

On Feb 11, 2017, at 8:37 AM, Christopher Cornell <      > wrote:

> Thanks Kim. Subject to arrangement changes of coarse.
> I was thinking I should sing the last chorus the same as the first chorus.
>
> On Feb 11, 2017, at 6:38 AM, Kim Thauil < > wrote:
>
>> Beautiful, there it is ...
>>
>> Wonderful work!
>> Kim
>>
>>
>> On Feb 9, 2017, at 6:41 PM, Christopher Cornell
>> <      > wrote
>>
>>
>> Begin forwarded message:
>>
>>> **From:** Christopher Cornell
>>> **Date:** February 9, 2017 at 8:58:55 PM EST
>>> **To:** Chris Cornell
>>>
>>> | Click to Download |
>>> | --- |
>>> | Mermas.aif |
>>> | 78.3 |

1

VC0000060

# EXHIBIT C

**From:** Peter Paterno<
**Date:** 8/20/2019
**To:** Rit Venerus; Vicky Cornell, Brent Canter
**Cc:** Chris Nary; Mark Goodman; Joy Derdiger; Amy Self; Debra MacCulloch; Marty Singer

**Subject: RE: Did we get paid from artist den yet**

It seems easier to run everything through you so all the accountings are proper. The band understands Vicky must be paid.


Peter Paterno, Esq.

King, Holmes, Paterno & Soriano, LLP

1900 Avenue of the Stars, 25th Floor

Los Angeles, CA 90067

Telephone: (310) 282-8937

Facsimile: (310) 552-4959




**From:** Rit Venerus
**Sent:** Tuesday, August 20, 2019 11:10 AM
**To:** Vicky Cornell; Brent Canter
**Cc:** Chris Nary; Peter Paterno, Mark Goodman; Joy Derdiger; Amy Self; Debra MacCulloch; Marty Singer
**Subject:** RE: Did we get paid from artist den yet


I don't see any issue from my end with the estate being paid their share directly provided that each party would then be responsible for any commissions due on their share and pro-rata legal costs.


Rit Venerus

Cal Financial Group

700 Harris Street, Suite 201

Charlottesville, VA 22903

(434) 817-9390 phone

(434) 817-9391 fax


**From:** Vicky Cornell
**Sent:** Tuesday, August 20, 2019 12:32 PM
**To:** Brent Canter
**Cc:** Chris Nary; Peter Paterno; Rit Venerus; Mark Goodman; Joy Derdiger; Amy Self; Debra MacCulloch; Marty Singer
**Subject:** Re: Did we get paid from artist den yet


Hey Brent , Rit,

Just one concern - if payments are directed to SG partnership and somehow mine are held hostage by other band members refusing to allow Rit to pay me then I'm not ok with that please confirm no one will hold up my money or I need to have my payments go elsewhere.


On Aug 20, 2019, at 11:53 AM, Brent Canter <        > wrote:

> Hi Chris and Rit,
>
>
> Is it just Artists Den that needs an LOD to pay the Soundgarden partnership or UME as well? Are all payments (advances and royalties) getting directed to the partnership?
>
>
> Thanks,
>
> Brent
>
>
> Brent A. Canter, Esq. |
> **King, Holmes, Paterno & Soriano, LLP**
> direct: 310.282.8921 | ext 221 | fax: 310.282.8903