UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VICKY CORNELL, *et al.*,

               Plaintiffs,

   v.

SOUNDGARDEN, *et al.*,

               Defendants.

Case No. C20-1218-RSL-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

The matters before the Court are Defendants Cal Financial Group, Inc. ("CFG") and Rit Venerus' (collectively, "Financial Defendants") Motion to Dismiss pursuant to Rule 12(b)(6) (Financial Defs.' Mot. (dkt. # 141)) and Defendants Soundgarden, Kim Thayil, Matt Cameron, and Hunter Shepherd's (collectively, "Soundgarden Defendants") Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Soundgarden Defs.' Mot. (dkt. # 142)). Soundgarden Defendants and Financial Defendants move to dismiss Plaintiffs' conversion claim and Financial Defendants also move to dismiss Plaintiffs' breach of fiduciary duty claim. Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, the Court recommends Defendants' motions be GRANTED and Plaintiffs' conversion claim (Count Three)

REPORT AND RECOMMENDATION - 1

and breach of fiduciary duty claim (Count Four) be DISMISSED without leave to amend for the reasons discussed below.

## II. BACKGROUND

Vicky Cornell ("Vicky"), individually and in her capacity as the personal representative of the Estate of Chris Cornell (collectively, "Plaintiffs") brought this action against her late husband's former bandmates and business manager. (Second Am. Compl. ("SAC") (Dkt. # 139).) Vicky's husband, Chris Cornell ("Chris"), was a member of Soundgarden, a world-renowned rock band and a Washington general partnership. (*Id.* at ¶¶ 12-13.) Plaintiffs allege that before his death in 2017, Chris created unreleased vocal recordings separate and apart from the Soundgarden band. (*Id.* at ¶ 44.) Plaintiffs assert there was never an agreement between Chris and the other bandmembers that the vocal recordings were property of the Soundgarden band or partnership; rather, they allege Chris was the exclusive owner and copyright holder of the recordings. (*Id.* at ¶ 45.) Plaintiffs assert that after Chris' passing, they became the legal beneficiaries of those copyright interests and are the exclusive owners of the vocal recordings. (*Id.* at ¶ 46.) Plaintiffs allege Soundgarden Defendants have sent them a demand letter, asserting all of Chris' vocal recordings belong to the partnership and that Plaintiffs have no ownership rights to those recordings. (*Id.* at ¶¶ 57, 58.)

Plaintiffs also claim Soundgarden Defendants conspired with Financial Defendants to withhold funds that the partnership allegedly approved for distribution ("disputed funds") to Vicky. (SAC at ¶¶ 75, 112-121.) Specifically, Plaintiffs allege the Defendants have withheld hundreds of thousands of dollars. (*Id.* at ¶ 114.) In support of their claim that the partnership approved a distribution, Plaintiffs cite to an email from Mr. Venerus stating "I don't see any issue from my end with the estate being paid their [sic] share provided that each party would

1  then be responsible for any commissions due on their share and pro-rata legal costs." (*Id.* at ¶

2  116.) Plaintiffs also cite to an email from the band's former attorney that states "[t]he band

3  understands Vicky must be paid." (*Id.* at ¶ 117.)

4        Plaintiffs further allege that Financial Defendants breached their fiduciary duty to

5  Plaintiffs. (SAC at ¶¶ 122-32.) Plaintiffs assert that Mr. Venerus and Vicky built a relationship of

6  trust and that he looked out for Vicky's interests separate and apart from Chris' interests. (*Id.* at ¶

7  123.) Plaintiffs also assert that after Chris' death, Mr. Venerus assured Vicky that he and his

8  business, CFG, would continue to discharge their obligations to Vicky and her children, and that

9  Financial Defendants were in a superior position to influence Vicky that caused her to relax her

10 care and vigilance. (*Id.* at ¶¶ 125-27.) Plaintiffs also assert Mr. Venerus served as Vicky's "point

11 person" in dealing with Soundgarden matters. (*Id.* at ¶ 123.) Plaintiffs claim these circumstances

12 gave rise to a fiduciary duty and that Financial Defendants breached this duty by, *inter alia*,

13 failing to disclose a conflict of interest, making false assurances that they would safeguard the

14 disputed funds, failing to safeguard the disputed funds, and falsely claiming Plaintiffs would be

15 paid the disputed funds. (*Id.* at ¶ 131.) Plaintiffs also allege Financial Defendants

16 misappropriated the disputed funds by using them to pay the bandmembers attorneys' fees in this

17 action. (*Id.* at ¶¶ 119, 131.)

18                         **III.   DISCUSSION**

19       **A.   Rule 12(b)(6)**

20       Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

21 theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

22 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, claims

23 "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

1  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility if the party pleads factual content that "allows the Court to draw the reasonable inference that [the opposing party] is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). It must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. The Court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 889-90 (9th Cir. 1986) (citing *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983)). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When ruling on a motion to dismiss, a court ordinarily may not consider matters outside the pleadings without converting it into a motion for summary judgment. Fed. R. Civ. P. 12(b)(6); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). But a court may consider documents that are essential to the pleadings and whose validity is not questioned. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

**B.    Conversion**

As noted above, Plaintiffs claim Soundgarden Defendants and Financial Defendants converted funds that were approved by the partnership for distribution by withholding them from Plaintiffs and misappropriating them. (SAC at ¶¶ 112-121.)

Conversion is "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Consulting Overseas Mgmt., Ltd. v. Shtikel,* 105 Wash. App. 80, 83 (Wash. App. Div. 1, 2001) (quoting

*Wash. State Bank v. Medalia Healthcare, LLC*, 96 Wash. App. 547, 554 (Wash. App. Div. 1, 1999))."Money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it." *Id.* at 83 (citing *PUD of Lewis County v. WPPSS,* 104 Wash.2d 353, 378 (1985). Furthermore,

> [t]here is nothing in the nature of money making it an improper subject of [conversion] so long as it is capable of being identified, as when delivered at one time, by one act and in one mass, or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained.

*Westview Invs., Ltd. v. U.S. Bank Nat. Ass'n*, 133 Wash.App. 835, 852 (Wash. App. Div. 1, 2006) (alterations in original) (internal quotation marks omitted) (quoting *Davin v. Dowling*, 146 Wash. 137, 140 (1927)).

Soundgarden Defendants argue Plaintiffs claim for conversion must be dismissed pursuant to Rule 12(b)(6) because they have not sufficiently alleged they were owed the disputed funds. (Soundgarden Defs.' Mot. at 10-13.) Specifically, they argue Plaintiffs have not alleged any factual details that the partnership approved distribution of the disputed funds, other than to generally assert it took place. (*Id.* 11-12.) They therefore argue Plaintiffs have no property interest in the funds, as they do not own the funds and have not alleged they possessed or received them. (*Id.*) Soundgarden Defendants argue the disputed funds are instead owned by the partnership, and that under Washington law, the partnership continues to legally own the disputed funds until there is a distribution by partner vote. (*Id.* (citing RCW 25.05.005).) They further argue that because the partnership owns the disputed funds, Plaintiffs have failed to allege that Soundgarden Defendants wrongfully received them or that they had an obligation to return them to Plaintiffs. (*Id.* at 12.) Lastly, they argue Plaintiffs' allegation that hundreds of

1  thousands of dollars were converted fails to identify the amount of money converted as required
2  to state a claim. (*Id*. at 12-13.)

3  Financial Defendants similarly argue Plaintiffs have failed to state a claim for conversion
4  because they have not adequately alleged the partnership approved a distribution. (Financial
5  Defs.' Mot. at 6-8.) They argue Mr. Venerus' email stating that he did not see any issues with the
6  estate being paid its share is insufficient to allege any partnership approval as he is not a partner.
7  (*Id.* at 6-7.) Financial Defendants also note Plaintiffs have not alleged that the other partners
8  approved or received a disbursement. (*Id.* at 7.) Financial Defendants assert that because there is
9  no allegation of disbursement, the Plaintiffs have not alleged that there was a legal obligation to
10 disburse the funds to Plaintiffs. (*Id.* at 6-7; Financial Defs.' Reply (Dkt. # 146) at 2-3.)

11 Plaintiffs assert that at this stage in the litigation, their allegations are sufficient to allege
12 the partnership approved disbursement of the dispute funds. (Pls.' Resp. to Soundgarden Defs.'
13 Mot. at 5-7.) Plaintiffs direct the Court to their allegation that "the Partnership, the Surviving
14 Band Members, Venerus, and Cal Financial have withheld hundreds of thousands of dollars
15 which they acknowledged were owed to Plaintiffs and which they approved for distribution" and
16 assert this allegation is sufficient to show they had possessory interests in the disputed funds. (*Id.*
17 at 5-6 (citing Compl. at ¶ 114).) In support of their allegation, they assert the alleged partnership
18 approval was ratified through Mr. Venerus and the band's former attorney's emails. (*Id.* at 5,
19 n.6.) Plaintiffs also argue that because the disputed funds are capable of being identified, they
20 need not allege a specific amount at the pleading stage. (*Id.* at 6.)

21 Here, the Court agrees with Defendants. Plaintiffs fail to state a conversion claim for a
22 number of reasons. Plaintiffs have not asserted sufficient factual allegations that they possessed
23 or had property interest in the disputed funds at any time. Rather, they merely assert in a

REPORT AND RECOMMENDATION - 6

conclusory fashion that Defendants approved the funds for distribution. The Court also finds Plaintiffs' reliance on Mr. Venerus' and the band's former attorney's emails unpersuasive. Both emails are statements from non-partners about their understanding or position regarding potential payments to Plaintiffs. The SAC is devoid of any allegations regarding statements or actions from the partners that would support a plausible claim that they in fact approved a disbursement. Plaintiffs' allegations simply amount to their belief that a partnership approval occurred.

Because Plaintiffs have not sufficiently alleged approval from the partnership, they have failed to show Soundgarden Defendants, who own the funds, wrongfully received them or that they were obligated to return the funds to Plaintiffs. For similar reasons, Plaintiffs have failed to show that Financial Defendants, who are non-partners, owned the disputed funds or ever received them, and thus, have failed to show they had an obligation to return the disputed funds to Plaintiffs. Further, Plaintiffs' allegation that "hundreds of thousands of dollars" are being withheld fails to identify what specific funds were allegedly converted. Accordingly, even drawing all reasonable inferences in Plaintiffs' favor, they have failed to sufficiently allege a conversion claim and the Court recommends Plaintiffs' claim be dismissed.

Soundgarden Defendants also argue Plaintiffs' conversion claim should be dismissed as moot pursuant to Rule 12(b)(1). (Soundgarden Defs.' Mot. at 7-10.) They argue that because the partners never entered into a written agreement, Washington general partnership law applies, specifically Washington's Revised Uniform Partnership Act ("RUPA"), RCW Chapter 25.05. (*Id.* at 8.) They assert that under RUPA, Chris became dissociated from the partnership when he passed, requiring the partnership to provide a buyout offer to his estate after receiving a formal written buyout demand. (*Id.* at 8-9. (citing RCW 25.05.250.) They argue that because Plaintiffs

REPORT AND RECOMMENDATION - 7

tendered a formal buyout demand, and the partnership provided buyout offers, the process outlined in RUPA will determine the amount of money owed to buyout Chris' interests in the partnership. (*Id.* at 9-10.) They therefore assert all financial obligations between Plaintiffs and the partnership must be resolved through that process. (*Id.*) Because the Court recommends that Plaintiffs' claim for conversion be dismissed under Rule 12(b)(6), the Court does not address Soundgarden Defendants' alternate argument under Rule 12(b)(1).

### C. Fiduciary Duty

Plaintiffs also claim Financial Defendants breached their alleged fiduciary duty to Plaintiffs. For a claim of breach of fiduciary duty, parties must show: (1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, (3) resulting injury, and (4) that the breach of duty proximately caused the injury. *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash.App. 412, 433-34 (Wash. App. Div. 3, 2002). A fiduciary relationship can arise either in law or in fact. *Liebergesell v. Evans*, 93 Wash.2d 881, 890 (1980). A fiduciary relationship arises in law when "the nature of the relationship between the parties [is] historically considered fiduciary in character; [*e*].*g*., trustee and beneficiary, principal and agent, partner and partner, husband and wife, physician and patient, attorney and client." *McCutcheon v. Brownfield*, 2 Wash.App. 348, 356-57 (Wash. App. Div. 1, 1970); *accord Micro Enhancement Int'l*, 110 Wash.App. at 434. On the other hand, a fiduciary relationship arises in fact when there is "something in the particular circumstances which approximates a business agency, a professional relationship, or a family tie, something which itself impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise." *Hood v. Cline*, 35 Wash.2d 192, 200 (1949) (quoting *Collins v. Nelson*, 193 Wash. 334, 345 (1938)).

"Superior knowledge and assumption of the role of adviser may contribute to the establishment of a fiduciary relationship." *Liebergesell*, 93 Wash.2d at 891.

Plaintiffs assert a number of allegations regarding their breach of fiduciary duty claim. As detailed above, they claim, *inter alia,* Vicky and Mr. Venerus built a relationship of trust and that he looked out for Vicky's interests separate and apart from Chris' interests. (SAC at ¶ 123.) They also allege the Financial Defendants assured Vicky that they would continue to faithfully and dutifully discharge their obligations to Plaintiffs after Chris' passing. (*Id.* at ¶ 125.) They further allege they depended on the Financial Defendants to advise and counsel them and that the Financial Defendants were in a superior position to influence Vicky, causing her to relax her care and vigilance. (*Id.* at ¶ 127; Pls.' Resp. to Financial Defs.' Mot. (Dkt. # 144) at 8 (citing *Liebergesell*, 93 Wash.2d at 890).) Plaintiffs argue these allegations are sufficient to establish that a fiduciary duty existed at this stage in the litigation. (Pls.' Resp. to Financial Defs.' Mot. at 7-8.) Plaintiffs also assert they have alleged a plausible breach of fiduciary claim as a matter of law based on their allegations that the Financial Defendants falsely assured Plaintiffs they would protect the disputed funds and disburse them to Plaintiffs, but instead misappropriated them. (*Id.* at 9-10.)

Financial Defendants argue Plaintiffs have failed to allege any facts regarding the basis for their alleged relationship of trust, or what it is they trusted Mr. Venerus to do. (Financial Defs.' Reply at 6.) Similarly, they argue Plaintiffs have failed to allege what obligations Mr. Venerus owed to Plaintiffs, what "looking out" for Plaintiffs' best interest entailed, or what advice, if any, he provided Plaintiffs. (*Id.* at 7.) They therefore argue Plaintiffs' breach of fiduciary duty claim fails because Plaintiffs have not sufficiently alleged a fiduciary duty

existed.[1] (*Id.*) Financial Defendants further argue no fiduciary duty existed because Plaintiffs do not allege that they hired Mr. Venerus as a financial advisor or that they paid any money to Financial Defendants to perform any services. (Financial Defs.' Mot. at 9.)

The Court finds Plaintiffs' allegations do not sufficiently allege a fiduciary duty existed, and therefore, their breach of fiduciary duty should be dismissed. Although Plaintiffs generally assert that Vicky and Mr. Venerus had a relationship of trust, and that he would look after her interests, they fail to allege what Plaintiffs expected of Mr. Venerus or CFG. Similarly, Plaintiffs' conclusory allegations that Financial Defendants' assured they would discharge obligations to Plaintiffs, or somehow safeguard the dispute funds, provides no detail that would support the existence of a legal fiduciary duty. Plaintiffs therefore fail to allege the nature of their relationship with Financial Defendants was one of a fiduciary character.

While Financial Defendants may have special knowledge regarding the relationship between Soundgarden and Plaintiffs, there are no allegations with a sufficient level of specificity that either Mr. Venerus or CGF were in the role of advising Plaintiffs. At most, Plaintiffs allege Mr. Venerus was a go-between for Vicky regarding Soundgarden. However, being a go-between is insufficient to allege Mr. Venerus acted as Plaintiffs' advisor. Accordingly, the Court recommends Plaintiffs' breach of fiduciary duty be dismissed.

D.    **Leave to Amend**

Plaintiffs' claims for conversion and breach of fiduciary duty are subject to dismissal pursuant to Rule 12(b)(6) because Plaintiffs' SAC lacks sufficient facts to present a cognizable

---

[1] In the Financial Defendants' motion to dismiss, they argue that pursuant to RUPA, RCW 25.05.165(2)(a)-(c), partners owe a fiduciary duty of loyalty and care to the partnership and partners, and that because Plaintiffs are not partners, no fiduciary duty exists. (Financial Defs.' Mot. at 8-10.) In Plaintiffs' response, they assert that it is irrelevant whether the parties were partners because the partnership approved disbursement of the dispute funds to Plaintiff, seemingly conceding that they are not alleging a fiduciary duty exists pursuant to RUPA. (Pls.' Resp. to Financial Defs.' Mot. at 10.)

REPORT AND RECOMMENDATION - 10

claim against Defendants. If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. Generally, dismissals under Rule 12(b)(6) should be without prejudice and leave to amend the complaint should be granted unless the plaintiff has acted in bad faith or amendment would be futile. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107-08 (9th Cir. 2003). In other words, leave to amend need not be granted when amendment would be futile.

The Court finds granting leave to amend to give Plaintiffs another opportunity to add additional facts would be futile. This is Plaintiffs' second amended complaint, and thus, they have already had ample opportunity to include more specific allegations to support their claims. However, despite these opportunities, their factual allegations still fall far short of alleging plausible conversion and breach of fiduciary duty claims. Accordingly, recommends dismissal without leave to amend.

### IV.    CONCLUSION

For the foregoing reasons, the Court recommends Defendants' motions (dkt. ## 141, 142) be GRANTED and Plaintiffs' conversion claim (Count Three) against Soundgarden Defendants and Financial Defendants, and Plaintiffs' breach of fiduciary duty claim against the Financial Defendants (Count Four) be DISMISSED without leave to amend. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within

**fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 9, 2021.**

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Robert S. Lasnik.

Dated this 19th day of March, 2021.

_____
MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12